STOEL RIVES LLP
David B. Levant
Andrew A. Guy
600 University Street, Suite 3600
Seattle, WA 98101
Phone: (206) 386-7601
Fax: (206) 386-7500
dblevant@stoel.com
aaguy@stoel.com

Attorneys for General
Electric Capital Corporation

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>CENTURION PROPERTIES III, LLC,<br><br>Debtor. | Chapter 11<br><br>Bankruptcy No. 10-04024-FLK 11<br><br>RESPONSE BY GECC TO DEBTOR'S EXPEDITED MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND OTHER RELIEF |

General Electric Capital Corporation ("***GECC***"), by and through its undersigned counsel of record, hereby responds to the Expedited Motion (the "***Motion***") of Centurion Properties III, LLC ("***CPIII***" or the "***Debtor***") for open-ended interim authority to use GECC's cash collateral.

GECC respectfully requests that the Court (i) authorize CPIII to use $123,500.52 of cash collateral held in the Lockbox[1] to pay the "July 14, 2010 – Task Order Request" and $133,315.16 to pay the "July 14, 2010 – Service Order Request" identified in CPIII's proposed First Interim Order Authorizing Use of Cash Collateral (Docket #13; the "***Proposed Order***"), *subject to* GECC's confirmation that the expenses covered by such Task Order Request and Service Order Request are for expenses reasonably related to the maintenance and repair of the

---

[1] Terms defined in the Motion or in the Memorandum in Support of the Motion and used in this Response without further definition have the meanings given to them in the Motion or Memorandum in Support.

RESPONSE BY GECC TO DEBTOR'S EXPEDITED
MOTION FOR INTERIM ORDER AUTHORIZING USE
OF CASH COLLATERAL AND OTHER RELIEF - 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

70175265.1 0030780-00092

Battelle Property; (ii) grant GECC adequate protection for the use of its cash collateral and, in connection therewith, modify the Proposed Order in the manner set forth in GECC's Submittal of Alternative Form of Proposed "Interim Order Authorizing Use of Cash Collateral" to be filed prior to the hearing on the Motion; and (iii) deny the balance of the Motion without prejudice.

**I.  The Court Should *Conditionally* Approve the Use of Cash Collateral Currently in the Lockbox to Pay the July 14, 2010 – Task Order Request and July 14, 2010 – Service Order Request.**

GECC has no objection at this time to the Debtor's use of cash collateral as needed to maintain and repair the Battelle Property. It would be detrimental to GECC's own interests to refuse to approve the use of its cash collateral to the extent necessary to maintain the collateral for its loan to the Debtor. Indeed, as CPIII acknowledges, *GECC has been allowing its cash collateral to be used by CPIII for payment of appropriate Service Orders and Task Orders for the last two years*.

As explained in the Debtor's Memorandum in Support of the Motion (the "***Memorandum***"), GECC has been receiving all monies paid by Battelle for Service Rent and Task Orders (as well as Base Rent) through the Lockbox since October 2008. Memorandum at 12. Funds are then disbursed from the Lockbox pursuant to a procedure (described on pages 13 and 25-26 of the Memorandum) that allows GECC to review and approve the expenditure of such funds to pay Service Orders and Task Orders.

GECC is now in the process of reviewing the July 14 Task Order and Service Order requests, which it received from CPIII less than 24 hours ago, and anticipates that it will approve the same. The Debtor has not alleged anywhere in its pleadings that there are emergent circumstances that preclude GECC's review of the requests made yesterday. In fact, just the opposite is true. As CPIII admits in its Memorandum:

> Sebastian Perin, the GECC Asset Manager in charge of the GECC loan assured the Debtor [that GECC] would set up a process to expedite approval and distribution of the Service Rate Payments and Task Order Payments so there would be no interruption and, accordingly, Battelle would not be disrupted. The parties developed a twice-monthly system whereby Sigma would e-mail GECC

RESPONSE BY GECC TO DEBTOR'S EXPEDITED
MOTION FOR INTERIM ORDER AUTHORIZING USE
OF CASH COLLATERAL AND OTHER RELIEF  -  2

70175265.1 0030780-00092

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

10-04024-FLK11    Doc 17    Filed 07/15/10    Entered 07/15/10 11:50:41    Pg 2 of 6

the required draw amounts, with documentation and the date that payment was required (frequently 1-2 business days from the e-mail date), and ***without exception Sebastian was able to obtain the necessary approvals and have the funds wired within 1 business day of the required date***.

Memorandum at 25-26 (emphasis added).

Accordingly, there is no need for the Debtor to insert the Court into the middle of the parties' well-established process for review, approval and payment of Service Orders and Task Orders, absent an unprecedented refusal of GECC to approve appropriate disbursements. All that is required at this time is for the Court to *authorize* the use of cash collateral, so as to avoid any possible issues concerning the rights of alleged junior lien holders.[2]

## II. The Court Should Refuse the Debtor's Request to Use up to $225,000 to Fund a Proposed Service Order and Administrative Expense Reserve.

Unlike its request to use cash collateral to pay certain Service Orders and Task Orders —all of which are specifically-identified, presumably constitute legitimate and necessary expenditures of cash collateral to preserve the Debtor's property and GECC's collateral, and might require timely action by the Court if GECC were unwilling to consent to them—the balance of CPIII's request for emergency use of cash collateral is for ill-defined purposes that may or may not benefit the Battelle Property and are not in any way emergent. In addition to violating the Federal Bankruptcy Rules, this portion of CPIII's request to use cash collateral is based on a misunderstanding of the applicable law with respect to GECC's entitlement to default rate interest. Accordingly, the Court should deny the Motion other than as set forth in Part I above.

The balance of CPIII's Motion, apart from the request to use GECC's cash collateral currently held in the Lockbox to pay the July 14, 2010 Service Orders and Task Orders, concerns two potential issues arising from GECC's refusal *following the maturity of the GECC loan* to

---

[2] In consenting to the requested use of cash collateral to pay the July 14, 2010 Service Order and Task Order, GECC expressly reserves its right to withhold its approval of, and/or object to requests to use cash collateral to pay Service Orders and Task Orders, or any other expenses, in the future.

RESPONSE BY GECC TO DEBTOR'S EXPEDITED
MOTION FOR INTERIM ORDER AUTHORIZING USE
OF CASH COLLATERAL AND OTHER RELIEF - 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

70175265.1 0030780-00092

10-04024-FLK11    Doc 17    Filed 07/15/10    Entered 07/15/10 11:50:41    Pg 3 of 6

release "excess" Base Rents to the Debtor: First, CPIII asserts that it needs to collect the excess rents to fund a reserve, Memorandum at 26-27, and second, CPIII claims that it needs more than $60,000 per month to pay its lawyers and financial professionals. *Id.* at 27. Both of these arguments should be rejected.

First, to the extent the Debtor proposes to fund a reserve, it is not actually asking for permission to *use* cash collateral, but rather for *turnover* of cash from the Lockbox. Without addressing the issues presented under Sections 542 and 543 of the Bankruptcy Code with respect to the Lockbox, and whether the Debtor or Deutsche Bank should hold the "excess" Base Rents, relief should not be granted for Section 363 purposes because *CPIII has not specified how the funds actually will be used.* The gist of CPIII's argument seems to be that if the Debtor does not have control of the monies held in the Lockbox, then the funds might not be available at a later date when they are required to pay for certain Task Orders. *See* Memorandum at 24-25. This is untrue. The automatic stay clearly prevents GECC from thereafter applying any money in the Lockbox to the GECC loan balance without first obtaining relief from stay from this Court. *See* 11 U.S.C. § 362(a)(3) & (6). The money in the Lockbox isn't going anywhere and will be available, if and when needed, to pay appropriate expenses. Rather than seek *carte blanche* authority to use a $225,000 per month reserve as it sees fit, CPIII should request permission to use such funds in the Lockbox as it may require for specific Task Orders, or other purposes, when particular needs are identified and can be articulated and documented to the Court, GECC and other parties in interest.

Second, in a related vein, the Motion is premature and there is no basis whatsoever for emergency relief with respect to creation of a reserve to pay CPIII's professionals. The Debtor only filed its application to employ bankruptcy counsel yesterday afternoon (*see* Docket No. 11) and has yet to apply for permission to engage litigation counsel or financial professionals. The application for Crumb & Munding's employment discloses receipt of a $25,000 retainer by the firm, and no applications for compensation of professionals are likely to be filed for several

RESPONSE BY GECC TO DEBTOR'S EXPEDITED
MOTION FOR INTERIM ORDER AUTHORIZING USE
OF CASH COLLATERAL AND OTHER RELIEF - 4

70175265.1 0030780-00092

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

10-04024-FLK11    Doc 17    Filed 07/15/10    Entered 07/15/10 11:50:41    Pg 4 of 6

months. As noted above, the funds in the Lockbox will remain available for payment by CPIII of appropriate professionals' fees and expenses unless GECC or another party in interest is granted relief from stay to enforce its rights against such funds. In the meantime, cash collateral *cannot* be used to pay professionals. *See* 11 U.S.C. §§ 326-331 *and* FRBP 2016.

In addition, because the proposed reservation of $225,000 for unspecified future uses is in no way emergent, and the Motion was served with just two days' notice, such portion of the Motion should be rejected for that reason alone. *See* FRBP 4001(b)(2) (if a cash collateral motion is brought on less than 14 days' notice, "***the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate . . . .***") (emphasis added). CPIII's requested "use" of cash collateral to fund a reserve[3] is not emergent in at least two respects: (i) the funds are not actually to be used at this time, only taken out of the Lockbox, and (ii) the Debtor's Motion observes that a similar amount of "excess" Base Rent is likely to be available each month the Battelle leases remain in effect. *See* Memorandum at 26-27.

Finally, insofar as the Motion suggests that GECC should only be paid its regular or "note rate" interest, *see* Memorandum at 12 (explaining calculation of the $330,000 amount that CPIII proposes would continue to be paid to GECC as "adequate protection"), the Debtor is incorrect. Following the Supreme Court's decision in *Traveler's Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* 127 S. Ct. 1199 (2007), the Ninth Circuit recently ruled in *General Electric Capital Corp. v. Future Media Productions, Inc.,* 536 F.3d 969, 974 (9th Cir. 2008), that GECC's claim to default-rate interest should be allowed subject only to the substantive law governing the loan agreement, just like any other contract-based claim.

---

[3] The proposed use of cash collateral to create a reserve fund that can be used for a variety of purposes also appears to violate the requirements of FRBP 4001(b)(1)(B)(ii) because the Debtor has not actually stated "the purposes for the use of the cash collateral." As a matter of due process and fundamental fairness, GECC cannot be asked to consent to or make its arguments against undefined uses of cash collateral, some of which it might approve, and others it might strongly oppose.

RESPONSE BY GECC TO DEBTOR'S EXPEDITED
MOTION FOR INTERIM ORDER AUTHORIZING USE
OF CASH COLLATERAL AND OTHER RELIEF - 5

70175265.1 0030780-00092

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

10-04024-FLK11   Doc 17   Filed 07/15/10   Entered 07/15/10 11:50:41   Pg 5 of 6

**CONCLUSION**

For the foregoing reasons, GECC respectfully requests that the Court (i) authorize CPIII to use up to $123,500.52 of cash collateral to pay the "July 14, 2010 – Task Order Request" and up to $133,315.16 to pay the "July 14, 2010 – Service Order Request" *subject to* GECC's confirmation that the expenses covered by such Task Order Request and Service Order Request are for expenses reasonably related to the maintenance and repair of the Battelle Property; (ii) grant GECC adequate protection for the use of its cash collateral pursuant to the form of an alternative Order that includes the modifications to follow from GECC; and (iii) deny the balance of the Motion without prejudice.

DATED: July 15, 2010.

STOEL RIVES LLP

By: /s/ David B. Levant
David B. Levant, WSBA No. 20528
Andrew A. Guy, WSBA No. 09278
Attorneys for GECC

RESPONSE BY GECC TO DEBTOR'S EXPEDITED
MOTION FOR INTERIM ORDER AUTHORIZING USE
OF CASH COLLATERAL AND OTHER RELIEF - 6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

70175265.1 0030780-00092

10-04024-FLK11    Doc 17    Filed 07/15/10    Entered 07/15/10 11:50:41    Pg 6 of 6