JOHN D. MUNDING
CRUMB & MUNDING, P.S.
111 S. Post Street, PH 2290
Spokane, WA 99201
(509) 624-6464
munding@crumb-munding.com

Attorney for Debtor-in-Possession.

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **In re**<br><br>**CENTURION PROPERTIES III, LLC,**<br><br>Debtor. | Case No. 10-04024-FLK 11<br><br>Chapter 11<br><br>**STIPULATED AMENDED AND RESTATED ORDER AUTHORIZING FINAL USE OF CASH COLLATERAL** |

This matter came before the Court pursuant to the above-captioned Debtor's (the "**Debtor**") Motion for Order Authorizing: (1) Continued Utilization of Cash Collateral, and (2) Continuation of Adequate Protection, filed on December 17, 2010 [Docket No. 130] (the "**Second Cash Collateral Motion**"), and that certain Stipulated Order Authorizing Final Use of Cash Collateral [Docket No. 76] (the "**First Cash Collateral Order**"), entered on September 17, 2010.

This matter came before the Court for hearing on December 29, 2010, at 10:30 a.m. prevailing Pacific Time. Appearances were made by telephone as noted in the record.

Through the Second Cash Collateral Motion, the Debtor seeks authority to continue to use cash collateral as defined in Section 363 of the Bankruptcy Code[1] and continue to make adequate protection payments to General Electric Capital Corporation ("**GECC**") in the amount of $330,000 per month. As set forth herein, GECC is willing to stipulate to the relief sought in the Second Cash Collateral Motion on the terms contained herein, provided that (a) the Court provides adequate protection of GECC's interest in its cash collateral, and (b) the Debtor is only permitted to use cash collateral in accordance with the terms of this Order.

Upon review and consideration of the Second Cash Collateral Motion, the Court having conducted an interim hearing on cash collateral in the above-captioned case in accordance with Section 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), upon appropriate notice and after due deliberation and consideration of the evidence presented at such hearing, and sufficient cause appearing therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT:**

1. <u>Petition Date</u>. On July 9, 2010 (the "**Petition Date**") the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] References to Sections and Chapters of the Bankruptcy Code shall refer to Title 11, United States Code *et seq.*

3. **Core Proceeding.** The disposition of the Second Cash Collateral Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. **Notice.** Notice of the Second Cash Collateral Motion and the opportunity for a hearing on this Motion were appropriate and no other or further notice need be given.

5. **The Battelle Property.** The "**Battelle Property**" consists of five buildings, related improvements and common areas located on the leasehold estates located in Richland, Washington at the Battelle Memorial Institute Campus, all of which are leased back to Battelle Memorial Institute pursuant to five facilities leases (the "**Battelle Leases**").

6. **GECC's Loan and Security Interest.** On or about November 28, 2006, GECC and the Debtor entered into that certain Loan Agreement (the "**Loan Agreement**", and the loan made pursuant thereto, the "**Loan**"), secured by, among other things, the Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (Leasehold Estates) on the Battelle Property and other collateral (the "**Deed of Trust**" and together with the Loan Agreement and any and all documents related thereto, the "**Loan Documents**"). The Loan matured by its terms on November 30, 2009. As of the Petition Date, the outstanding principal balance of the Loan was $58,258,354 (plus fees and expenses incurred by GECC prior to the Petition Date chargeable to the Debtor under the Loan Documents). On November 23, 2010, GECC timely filed its Proof of Claim

in the above-captioned proceedings in the amount of $59,190,636.94 plus other amounts set forth therein (the "**Claim**"). GECC asserts that (i) it has a valid, perfected, enforceable, and unavoidable first priority lien upon and security interest in substantially all of the Debtor's assets, including real and personal property and cash collateral, which secure Debtor's prepetition obligations to GECC under the Loan Documents, and (ii) it is entitled to adequate protection in connection with any use by the Debtor of any cash collateral.

7. <u>Money Market Account/Lockbox</u>. Pursuant to the Loan Documents, revenues from the Battelle Property were to be paid into a Lockbox, from which a portion of the interest due to GECC under the Loan Documents and expenses related to the Battelle Property are paid (the "**Lockbox**"). Pursuant to the First Cash Collateral Order, the Debtor established a Money Market Account at Washington Trust Bank (the "**Money Market Account**"), all funds which were on deposit in the Lockbox were transferred to the Money Market Account, and all revenues from the Battelle Property collected after entry of the First Cash Collateral Order were to be deposited into the Money Market Account. Pursuant to the First Cash Collateral Order, the Money Market Account is controlled solely by the Debtor and does not require GECC's signature or written approvals for withdrawals therefrom. Withdrawals and disbursements from the Money Market Account are only permitted in accordance with this Order. Also under the First Cash Collateral Order, GECC was granted a first priority perfected security interest

in and lien upon the Money Market Account, all Debtors' rights in the funds therein, and any interest earned thereon, to the extent the Debtor has any right to funds in the Money Market Account. In addition, GECC is entitled to inquiry only access to view and review the balance and account activity of the Money Market Account and is entitled to complete, real time, direct access to information related to the Money Market Account, including through online access to the account. However, pursuant to the First Cash Collateral Order GECC does not have the ability to control activity in the Money Market Account. The Debtor, GECC, Deutsche Bank, and Washington Trust Bank, were authorized and empowered to take all actions necessary to implement the relief granted in the First Cash Collateral Order. GECC agreed to provide any reasonable required authorizations requested by Battelle to allow lease payments to be made to the Money Market Account.

8. <u>Revenues and Expenses</u>. The funds currently deposited into the Money Market Account (and formerly, the Lockbox) are paid to the Debtor by Battelle pursuant to the Battelle Leases and consist of: (i) Base Rent, (ii) Service Rate Payments and (iii) Task Order Payments. GECC contends that its security interest attached to all such revenues. The Debtor asserts that payments related to Service Rents and Task Order Payments are made by Battelle pursuant to the underlying lease agreements, specifically definitions concerning Service Rates,

Annual Service Rate Determination, and Task Orders. The Debtor represents as follows:

a. The **"Base Rent"** is the amount charged by the Debtor for Battelle to lease the Property.

b. The **"Service Rate Payments"** (aka **"Service Rents"**) are payments designed to cover the operating costs of the facilities which have been negotiated and already approved by Battelle, plus a management fee which Battelle also negotiated and incorporated into the Battelle Leases. For example, in the Battelle Leases the ground rent payable back to Battelle, property taxes, insurance, all utilities, HVAC and the like are included in the Service Rate Payments. Service Rate Payments are based on such estimated operating costs and management fees for the applicable year and paid in equal monthly installments. Battelle reviews and approves the Service Rates annually and Debtor does a year-end reconciliation. Often, the Debtor expends more throughout the year for Service Rate Payments and recovers the shortfall from Battelle after the year end reconciliation. In the interim the Debtor funds the shortfall in service rent payments from the Base Rents. However, upon reconciliation, all operating costs are ultimately paid by Battelle.

c. The **"Task Order Payments"** represent payments for work (such as capital improvements). Pursuant to Battelle Leases, Battelle requests the Debtor obtain bids and supervise construction of numerous, substantial improvements to the Property on a continuous basis. At times, monthly Task Order Payments can exceed $1,000,000, particularly during the summer construction season. Although it is Battelle that exclusively selects and approves the Task Order work to be performed, the Battelle Leases are structured to shift the administration and disbursement function to the Debtor, rather than directly by Battelle. Task Order requests and payment procedures are governed and controlled by the underlying applicable lease agreement and basic ordering agreement between Battelle and the Debtor. Task Order Payments are paid upon completion or during the applicable project.

9. <u>Stipulation and Good Faith</u>. The Debtor and GECC have conducted good faith negotiations relating to the Debtor's use of GECC's cash collateral and other matters referenced herein, such negotiations were at arms length, and the proposed terms and conditions as set forth herein are fair and reasonable under the circumstances.

**NOW THEREFORE**, after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

1. <u>Effect of Order</u>. The First Cash Collateral Order is hereby superseded by this Order as of January 1, 2011. This Order shall serve as the Court's order with respect to cash collateral and shall be deemed its final order upon expiration of the time period required by Rule 4001(b)(2) of the Bankruptcy Rules.

2. <u>Use of Cash Collateral</u>. Subject to this Order, the Debtor is authorized to use cash collateral in accordance with the Approved Budget (as defined below) or as otherwise ordered by the Court.

3. <u>Budgets</u>.

    a. <u>Approved Budget</u>. The Debtor shall be authorized to continue the use of cash collateral through December 31, 2010 in accordance with the First Cash Collateral Order. Commencing on January 1, 2011 and continuing through March 31, 2011, the Debtor shall use cash collateral in accordance with the requirements of the underlying leases with Battelle and consistent with the Budgets submitted concurrent herewith by separate pleading (Docket No. 140) (The "Approved Budget") subject to Permitted Variance.

    b. <u>Subsequent Approved Budgets</u>. The Debtor will prepare its budget for the three (3) month period (a "**Budget Period**") commencing April 1, 2011. This shall be prepared in accordance with past practice, including a lease supplement to be executed with Battelle adjusting Service Rents for the annual

Service Rent Period. This budget shall be submitted to GECC for approval on or before March 18, 2011, and a hearing for the approval thereof shall be take place on or before March 31, 2011.

   c. <u>Permitted Variance.</u> The Debtor shall be permitted to exceed the aggregate amount in the Budget for expenditures related to Service Rate Payments by an amount not to cumulatively exceed ten percent (10%) over the amount of Service Rate Payments actually collected from Battelle since the beginning of the applicable Service Rate Budget Period ("**Permitted Variance**"). In the event the Service Rate expenditures are to exceed the budget by more than ten percent (10%), the Debtor shall seek permission of GECC for payment of such additional amount. In the event consent to payment is withheld as to the variance, the Debtor may seek Court permission for payment.

   d. <u>Task Order Payments.</u> Projected revenues and expenditures related to Task Order Payments, as well as they are known at the time, shall be set forth in the proposed budget for each Budget Period. The Debtor shall be permitted to pay Task Order Payments, provided that all such expenditures are paid solely from funds received on account of Task Order Payments previously collected from Battelle. Task Order Payments may only be paid from funds from any source other than Task Order Payments if (i) included in the Approved Budget, or (ii) ordered by the Court.

e. <u>Administrative Claims and United States Trustee Fees</u>. This Order shall be without prejudice to the right of the Debtor to apply to the Court on appropriate notice and motion to seek approval and payment of administrative expenses, professional fees, which shall be estimated Budgets. United States Trustees fees may be paid as a budget approved expense in the ordinary course with cash collateral. The payment of such fees pursuant to the Budget or as ordered by the Court may be paid with funds in the Money Market Account.

4. <u>Money Market Account</u>. All revenues from the Battelle Property will be deposited into the Money Market Account. The Money Market Account will be controlled solely by the Debtor and not require GECC's signature or written approvals for withdrawals therefrom. Disbursements from the Money Market Account shall be made solely by the Debtor and solely in accordance with this Order. To the extent the Debtor has any right to funds in the Money Market Account, GECC is hereby granted a first priority perfected security interest in and lien upon the Money Market Account, all Debtor's rights in the funds therein, and any interest earned thereon. GECC shall be entitled to inquiry only access to view and review the balance and account activity of the Money Market Account and shall have complete, real time, direct access to information related to the Money Market Account, including through online access to the account. GECC will not, however, have the ability to control activity in the Money Market Account. The Debtor, GECC, Deutsche Bank, and Washington Trust Bank, and all other parties,

are authorized and empowered to take all actions necessary to implement the relief granted in this Order. GECC agrees to provide any reasonable required authorizations requested by Battelle to allow lease payments to be made to the Money Market Account.

5. Interest Payments.

a. Background. Pursuant to the Loan Documents, GECC is entitled to the monthly payment of interest based on the outstanding principal amount of the Loan on the first day of each month. Under the Loan Documents, the outstanding principal balance of the Loan bears interest at a rate of interest equal to six and thirty-six hundredths percent (6.36%) per annum (the "**Contract Rate**"), plus a default rate of interest equal to an additional five percent (5%) per annum (the "**Default Rate**"). GECC may also seek fees and costs related to the Loan under the Loan Documents. The Debtor reserves the right to challenge the reasonableness of such fees and costs.

b. Adequate Protection Payment. To provide adequate protection of GECC's interest in the property securing its prepetition secured claims against the Debtor resulting from the use of cash collateral, it is hereby ordered that on or before the 1st day of each month, the Debtor shall pay GECC $330,000.00. Such payment shall be in satisfaction of the interest accruing on the Loan for that month at the Contract Rate. All payments received by GECC, including any amount paid on a monthly basis in excess of the interest accruing at the Contract Rate, shall be

applied to the Loan according to the terms of the Loan Documents and GECC is hereby authorized and granted relief from stay to do so. In addition thereto, and as further adequate protection of GECC's interest, interest shall accrue on the outstanding principal balance of the Loan at the Default Rate in accordance with the Loan Documents ("**Default Interest**"). The Debtor reserves the right to contest GECC's right to Default Interest to the extent GECC is determined <u>not</u> to be oversecured and further reserves the right, if any, to modify the terms and the present loan, including Default Interest, through a Plan of Reorganization consistent with the confirmation standards in the Bankruptcy Code.

6. <u>Replacement Liens</u>. To provide further protection to GECC for any decrease in the value of its interest in any property securing its prepetition secured claims against the Debtor resulting from the use of cash collateral by the Debtor, and to secure any such decrease, GECC is hereby granted a first priority perfected security interest in and lien upon all property constituting "Mortgaged Property" as defined in the Deed of Trust, whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof (including, without limitation, all claims of the Debtor against third parties for loss, damage or diminution of the value of such property), including all accessions thereto, substitution and replacement thereof, wherever located (the "**Replacement Collateral**" and the lien described above, the "**Adequate Protection Lien**").

7.  **Administrative Claim.** To provide further protection to GECC for any decrease in the value of its interest in any property securing its prepetition secured claims against the Debtor resulting from the use of cash collateral by the Debtor, GECC shall be entitled to any and all rights afforded by Section 507(b) of the Bankruptcy Code.

8.  **Waiver of Surcharge.** Except as otherwise authorized by an order of this Court, neither the Debtor nor any party who receives notice pursuant to Bankruptcy Rule 4001(d) shall be entitled to directly or indirectly charge any of the Replacement Collateral or GECC's collateral under the Loan Documents pursuant to Sections 105 or 506(c) of the Bankruptcy Code, direct the exercise of remedies, or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Replacement Collateral or GECC's collateral under the Loan Documents.

9.  **Further Adequate Protection.** If the protections afforded herein are, in retrospect, inadequate or otherwise fail to adequately protect GECC's interest, GECC may be entitled to a "super-priority" administrative claim under Section 507(b) of the Bankruptcy Code to the full extent of any deficiency, but subject to Debtor's reservation of rights herein and shall be entitled to seek an order allowing such a claim.

10. <u>Automatic Perfection</u>. The Adequate Protection Lien and all other liens and security interests granted hereunder shall be deemed valid and enforceable as of the Petition Date with no further action required by GECC. The granting of the Adequate Protection Lien is in addition to the liens and security interests of GECC in its existing collateral. The Adequate Protection Lien is governed by all the terms of the Loan Documents covering the collateral of GECC, except to the extent (if at all) directly contrary to the terms this Order or the Bankruptcy Code. The Adequate Protection Lien and other liens granted hereunder shall be deemed attached and perfected automatically and retrospectively to the Petition Date by entry of this Order. GECC shall <u>not</u> be required to record mortgages or file financing statements in order to perfect the Adequate Protection Lien, other liens granted hereunder or its security interest in the Replacement Collateral.

11. <u>Reports and Access</u>. The Debtor shall provide: (i) all reasonable financial reports for the each calendar month to GECC on or before the fifteenth day of any following month during which this Order (or a replacement cash collateral order) is in effect, commencing on January 15, 2011, and (ii) such other information relating to the Battelle Property and its leasing as GECC may reasonably request from time to time (including, without limitation, information on the status of rental, operating expenses, property maintenance, accounts paid, payable and receivable, capital improvements and repair costs, on reasonable

LA\2206531.3

14

STIPULATED AMENDED AND RESTATED ORDER
AUTHORIZING FINAL USE OF CASH COLLATERAL

10-04024-FLK11    Doc 147    Filed 12/30/10    Entered 12/30/10 15:08:48    Pg 14 of 20

notice). Notwithstanding the foregoing, GECC agrees it will not directly, or through its agents, contact Battelle directly unless it has first obtained Debtor's reasonable consent, which may require Debtor to be included in any communication.

12. <u>GECC's Liens</u>. In consideration for the use of cash collateral, subject to <u>Section 16</u> hereof, pursuant to this Order, GECC's first priority lien upon and security interest in all property owned, leased or in which and to the extent the Debtor has "rights" therein, and products, rents and proceeds thereof, are hereby confirmed. The parties reserve any and all rights with respect to whether GECC holds a security interest in the Service Rate Payments or Task Order Payments.

13. <u>Restriction on Additional Financing</u>. So long as the Debtor is authorized to use cash collateral pursuant to this Order, the Debtor shall not seek any order under 11 U.S.C. § 364(d)(1) with respect to any property of the estate which is subject to a security interest of GECC except for: (i) a loan whose proceeds would be used to pay the Loan in full, and (ii) as GECC may agree in writing, or (iii) for purchase money trade debt (e.g. equipment leasing and liens on supplies).

10-04024-FLK11    Doc 147    Filed 12/30/10    Entered 12/30/10 15:08:48    Pg 15 of 20

14. <u>Right to Credit Bid</u>. GECC shall have the right to "credit bid" the allowed amount of its secured claim in any sale, lease or other disposition of assets that secure the Debtor's obligations under the Loan Documents, including, without limitation, sales occurring pursuant to Sections 363 or 1123(a)(5)(D) of the Bankruptcy Code or included as part of any plan subject to confirmation under Section 1129(b)(2)(A)(ii) of the Bankruptcy Code.

15. <u>Debtor's Reservation of Rights</u>. The Debtor reserves the right to request additional use of cash collateral, and GECC shall have the ability to object to, contest, and challenge any such additional use of cash collateral. Before seeking an order for additional use of cash collateral, except in case of emergency or GECC agrees otherwise in writing, the Debtor agrees to provide GECC at least five (5) business days' prior notice particularly identifying the expenses for which the Debtor will seek Court approval for further use of cash collateral.

16. <u>Immediate Effect</u>. Notwithstanding the possible applicability of Rules 6004(h), 7062, and 9014 of the Bankruptcy Rules, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry as to GECC and the Debtor. After the notice requirements of Bankruptcy Rule 4001(d) are satisfied, this Order shall be binding on all parties in interest.

17. **Continued Compliance with the Loan Documents.** Except to the extent of those covenants which are already the subject of pending litigation, the Debtor shall honor the covenants in the Loan Documents, including, without limitation, relating to insurance coverage on the existing collateral and insurance coverage shall continue in full force and effect as to the existing collateral and any Replacement Collateral.

18. **Operating Reports.** The Debtor shall timely file all United States Trustee Operating Reports and simultaneously provide copies to GECC.

19. **Events of Default.** Any of the following events shall constitute an "**Event of Default**":

   a. Failure of the Debtor to comply with any term or requirement of this Order or any action taken by the Debtor in contravention thereof

   b. Entry of an order or judgment (i) terminating the authority of the Debtor to use all or any portion of the existing collateral or Replacement Collateral; (ii) dismissing this bankruptcy case or converting this case to a Chapter 7 case; (iii) appointing a Trustee; or (iv) granting any party in interest other than GECC relief from stay with respect to any property securing the Debtor's obligations to GECC;

c. The Debtor's expenditures exceed any Approved Budget by more than the Permitted Variance without the written approval of GECC or approval from the Court;

d. The commencement by the Debtor against GECC of any lawsuit, adversary proceeding. contested matter or other proceeding, which asserts any cause of action against GECC; or

e. This Order being vacated, amended (other than by agreement of the parties with the approval of the Court), reversed or stayed.

For avoidance of doubt, the effect of the Debtor violating the provisions of this Section 19, above shall be that GECC's consent to use cash collateral is immediately terminated and the Debtor may seek approval of the Court to use cash collateral for any purpose, and GECC shall be entitled to oppose such relief on any and all basis.

20. Notice of Certain Events of Default. Upon the occurrence of an Event of Default of the type described in Sections 19.a, upon the expiration of five (5) business days following the date of the receipt by the Debtor or its counsel of a written notice of default from GECC or its counsel, and the failure of the Debtor to cure such default within a ten (10) business day period (except in the case of a payment default, which must be cured within two (2) business days) after a hearing

in connection with an Event of Default may be heard on an expedited basis by either the Debtor or GECC.

21. <u>Termination of Authority to Use Cash Collateral</u>. The authority of the Debtor to use cash collateral will automatically terminate, without further action by GECC, the Debtor or the Court: (a) immediately upon the occurrence of an Event of Default of the type described in <u>Sections 19.b</u>, <u>19.c</u>, <u>19.d</u> or <u>19.e</u>; or (b) following notice and opportunity to cure upon the occurrence of an Event of Default of the type described in <u>Section 19.a</u>.

22. <u>Binding on Successors and Assigns; Modification</u>. This Order shall be binding upon GECC and the Debtor, and their respective successors and assigns (except any trustee hereafter appointed or elected as a representative for the estate of the Debtor in the above-captioned Chapter 11 proceeding or a subsequent proceeding under Chapter 7 of the Bankruptcy Code) and shall inure to the benefit of GECC and the Debtor (except with respect to any trustee hereafter appointed or elected as a representative for the estate) and their respective successors and assigns. Except as expressly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of the provisions of this Order. In the event that all or any of the provisions of this Order are hereafter modified, vacated or stayed (a "**Modification**"), the parties shall be entitled to the benefit of this Order until the Modification becomes effective. Nothing herein shall waive,

LA\2206531.3

19

STIPULATED AMENDED AND RESTATED ORDER
AUTHORIZING FINAL USE OF CASH COLLATERAL

10-04024-FLK11    Doc 147    Filed 12/30/10    Entered 12/30/10 15:08:48    Pg 19 of 20

release, modify, impair or restrict either Debtor's nor GECC's rights, remedies, and privileges under the Loan Documents.

Presented by:

CRUMB & MUNDING, P.S.

*/s/ John D. Munding*
JOHN D. MUNDING, WSBA #21734
Attorneys for Debtor-in-Possession

Approved as to form,
Notice of Presentation Waived.

LATHAM & WATKINS LLP

*/s/ Peter M. Gilhuly*
PETER M. GILHULY, *PRO HAC VICE*
Attorneys for General Electric Capital Corporation

*[signature]*
Frank L. Kurtz
Bankruptcy Judge

12/30/2010 14:50:20