1 JOHN D. MUNDING
2 CRUMB & MUNDING, P.S.
  The Davenport Tower, PH 2290
3 111 S. Post Street
4 Spokane, WA 99201
  509-624-6464
5 munding@crumb-munding.com
6
  Attorneys for Debtor-in-Possession
7

8

9 UNITED STATES BANKRUPTCY COURT
10 EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| In re | No. 10-04024-FLK 11 |
| **CENTURION PROPERTIES III, LLC,** | Chapter 11 |
| | **DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S PLAN OF REORGANIZATION** |
| Debtor. | |

## I.    OVERVIEW AND IDENTIFICATION OF PROPONENT

Centurion Properties III, LLC, debtor and debtor-in-possession ("CPIII" or "Debtor") submits this *Disclosure Statement to Accompany Plan of Reorganization* of even date. The Debtor is the proponent of the Plan. A copy of the Plan will be served with this Disclosure Statement. Capitalized terms in this Disclosure Statement have the same meaning as provided in the Bankruptcy Code, Bankruptcy Rules, the Plan at *Article 1- Definitions*, or as separately defined in this Disclosure Statement.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

## II.  PRELIMINARY STATEMENT

The Disclosure Statement and Plan are submitted pursuant to Chapter 11 of the Bankruptcy Code or Code.  The Debtor submits this Disclosure Statement to all of its Creditors in order to comply with provisions of the Code requiring the submission of information necessary for Creditors to arrive at an informed decision in exercising their right to vote for acceptance or rejection of the Plan.

## III.  PLAN AND CODE PROVISIONS FOR VOTING

### A.  Relationship of Disclosure Statement to the Plan.

This Disclosure Statement provides relevant information about the Debtor, its financial condition, and the Plan.  This Disclosure Statement contains a detailed discussion of the Plan and its implementation; however, the discussion of the Plan in this Disclosure Statement is only a summary of the Plan and should be read in conjunction with the Plan, which is a legal document and which upon confirmation will become binding upon the parties.  Accordingly, this Disclosure Statement is qualified by the Plan.  If there is any inconsistency between the Plan and this Disclosure Statement, the Plan is controlling.

The Debtor urges Creditors and other parties-in-interest to consult with independent counsel in connection with their decision to accept or reject the Plan. Your Claim will be assigned to a Class of Creditors, and the treatment of each Class is

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

set forth in this Disclosure Statement and in the Plan. The Debtor has used its best efforts to comply with 11 U.S.C. § 1129 for this treatment. The only representations the Debtor is authorized to make concerning the value of its assets or potential distributions are contained in this Disclosure Statement.

The Debtor may not solicit acceptances or rejections of the Plan until the Court conducts a hearing on the Disclosure Statement, with notice of the hearing given to all Creditors of the Debtor, and the Court approves the Disclosure Statement as containing sufficient information for a Creditor to make an informed decision with respect to the Plan.

B.    Creditors Allowed to Vote: Deadline.

Creditors holding Allowed Claims are entitled to vote to accept or reject the Plan, unless the Plan lists such Claims as unimpaired. The Court will fix a date that will be the last date by which ballots upon the proposed Plan must be filed with the Court.

## VOTING AND CONFIRMATION PROCEDURES

Accompanying this Disclosure Statement are copies of the following documents: (1) the Plan, which is provided this Disclosure Statement; (2) a Notice to Voting Classes; and (3) an applicable Ballot. This Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the

DISCLOSURE STATEMENT - 3

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

"Solicitation Package"), are being furnished to Holders of Claims for the purposes of soliciting votes on the Plan. If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact John D. Munding at Crumb & Munding, P.S., The Davenport Tower, 111 S. Post Street, PH 2290, Spokane, Washington 99201; or by telephone at (509) 624-6464.

### 1.    Who May Vote

Pursuant to the provisions of the Bankruptcy Code, only classes of claims that are "impaired" and that are not deemed as a matter of law to have rejected a plan of organization under section 1126(g) of the Bankruptcy Code are entitled to vote to accept or reject the Plan.  Any class that is "unimpaired" is not entitled to vote to accept or reject the plan of reorganization and is conclusively presumed to have accepted the Plan.  As set forth in section 1124 of the Bankruptcy Code, a class is "impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.  For purposes of the Plan only, holders of Claims that are impaired are entitled to vote on the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote.  Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (i) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in the Debtor's Schedules as other

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

than "disputed," "contingent," or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount. In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purpose. The Debtors reserve the right through the claim reconciliation process to object to or seek to disallow any claim for distribution under the Plan.

## 2. Voting Instructions and Voting Deadline

All votes to accept or reject the Plan must be cast by using the Ballot enclosed with this Disclosure Statement. No votes other than ones using such Ballots will be counted, except to the extent the Bankruptcy Court orders otherwise. After carefully reviewing the Plan and this Disclosure Statement, including the annexed exhibits, please indicate your acceptance or rejection of the Plan on the Ballot and return such Ballot in the enclosed envelope by the deadline set forth in the Notice served herewith to:

> U.S. Bankruptcy Court
> Eastern District of Washington
> 904 W. Riverside Ave., Ste. 305
> Spokane, WA 99201
>
> *Mailing Address*
> P.O. Box 2164
> Spokane, WA 99210

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

With copy to undersigned counsel at:

> John D. Munding
> Crumb & Munding, P.S.
> 111 South Post, PH 2290
> Spokane, WA 99201

Ballots must be completed and received by the date specified in the Notice served herewith (the "Voting Deadline"). Any ballot that is not executed by a duly authorized person shall not be counted. Any ballot that is executed by the holder of an allowed claim but that does not indicate an acceptance or rejection of the Plan will be deemed to be acceptance. Any ballot that is faxed shall be counted in the voting to accept or reject the plan, unless that ballot is accepted in the Plan Proponents' discretion.

### 3. Whom to Contact for More Information

If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact John D. Munding at the address indicated below or by telephone at (509) 624-6464.

### 4. Acceptance or Rejection of the Plan

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by holders of impaired claims of at least two-thirds in dollar amount and more than one-half in number of the Allowed claims in that class that cast ballots for

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

acceptance or rejection of the plan and "acceptance" of a plan by a class of interests as acceptance by Holders of at least two-thirds in dollar amount of the Allowed interests in that class that cast ballots for acceptance or rejection of the plan. Assuming that at least one Impaired Class votes to accept the Plan, the Plan Proponents will seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, which permits the confirmation of a plan notwithstanding the non-acceptance by one or more impaired classes of claims or interests. Under section 1129(b) of the Bankruptcy Code, a plan may be confirmed if (a) the plan has been accepted by at least one Impaired class of claims or interests and (b) the Bankruptcy Court determines that the plan does not discriminate unfairly and is "fair and equitable" with respect to the non-accepting classes.

### 5.    Time and Place of the Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. Section 1128(b) of the Bankruptcy Code provides that any party in interests may object to confirmation of the Plan. Pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), the Bankruptcy Court has scheduled the Confirmation Hearing to commence before the Honorable Frank Kurtz, of the United States Bankruptcy Court for the Eastern District of Washington, United States Bankruptcy Court, 402 East Yakima Avenue, Suite 200,

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Yakima, WA 98901. A notice setting for the time and date of the Confirmation Hearing will be mailed as a separate pleading/document. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court or Plan Proponents without further notice.

### 6. Objections to the Plan

Any objection to confirmation of the Plan must be in writing; must comply with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court; and must be filed with the United States Bankruptcy Court for the Eastern District of Washington in Spokane and served as described in the Notice served herewith.

### C. Representations Limited.

No representations concerning the Debtor, particularly regarding future business operations or the value of the Debtor's assets, have been authorized by the Debtor except as set forth in this Disclosure Statement. You should not rely on any other representations or inducements proffered to you to secured your acceptance in arriving at your decision in voting on the Plan. Any person making representations or inducements concerning acceptance or rejection of the Plan should be reported to counsel for the Debtor at the address above and to the United States Trustee.

DISCLOSURE STATEMENT - 8

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

10-04024-FLK11    Doc 160    Filed 01/20/11    Entered 01/20/11 17:00:20    Pg 8 of 54

While every effort has been made to provide the most accurate information available, the Debtor is unable to warrant or represent that all information is without inaccuracy, although no known inaccuracies are present in this Disclosure Statement or the Plan. Further, some of the information contained herein consists of projections of future performance of an uncertain business. While every effort has been made to ensure that the assumptions are valid and the projections are as accurate as can be made under the circumstances, the Debtor does not undertake to certify or warrant the absolute accuracy of the projections and other information contained herein.

The Court has not verified the accuracy of the information contained herein. The Court's approval of the Disclosure Statement does not imply that the Court endorses or approves the Plan, but only that, if the information is accurate, it is sufficient to provide adequate information for Creditors to make an informed decision to approve or reject the Plan.

## IV. THE DEBTOR

A. <u>History of the Debtor.</u>

The Debtor is a Washington Limited Liability Company formed by its members on August 1, 2006. The sole purpose of the Debtor was and is "the acquisition, ownership, operation and management of the real estate project known as the Battelle Leaseholds located in Richland, Washington, and such activities are necessary,

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

incidental or appropriate in connection therewith." The Debtor's sole asset is its leasehold interests in the Battelle Memorial Institute Campus ("Battelle Property") and the improvements (i.e. the buildings) located thereof which, collectively, have been valued in excess of $90 million.

As of September 25, 2009, the Debtor's business records reflected ownership interest of the Company to be held as follows:

| Members/Holders of Percentage Interests in Company | Percentage Interests |
|---|---|
| Nicole M. Kelly | 10% |
| Centurion Management III, LLC | 63% |
| SMI Group XIV, LLC | 25% |
| Barclays North, Inc. | 1% |
| Patrick L. McCourt | 1% |

The foregoing ownership is verified by a company document identified as "First Amendment to the Limited Liability Company Agreement" dated September 25, 2009. This governance is recognized and supported by Benton County Superior Court Order dated May 28, 2010. Additionally, in accordance with Benton County Superior Court Order of February 12, 2010, Barclays North, Inc. and Patrick L. McCourt's interests was transferred to SMI Group XIV, LLC ("SMI"), resulting in SMI obtaining a 27 percent interest in CPIII.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

1    Even though Centurion Management III, LLC ("CM III") and Nicole M. Kelly

2    are on record as holding ownership interests in CPIII, it is the position of CPIII that

3

4    their membership status (i.e. their ability to vote and control CPIII's business affairs,

5    but not necessarily their base economic interest) has been terminated as a result of

6    their voluntary withdrawal from CPIII, transfers of membership interest in violation of

7

8    the Company Agreement, and complete disregard for the Company Agreement in

9    breach of the fiduciary obligations to CPIII by fellow members.  As a result, the only

10   qualified and recognized Member, for purposes of governance and business

11

12   administration, is SMI. As previously mentioned, this governance is confirmed and

13   authorized by Benton County Superior Court Order dated May 28, 2010.

14        B.    Managing Member of LLC.

15

16        Pursuant to its governing company agreements, the Debtor is managed by a

17   "Manager." The "Manager" of the Debtor is different than the property manager hired

18   by the Debtor to manage the Battelle Property.  As described below, the actual

19

20   Battelle Property Manager is Sigma Management, Inc.

21        The Managing Member of the Debtor, for purposes of management and

22   governance of the Debtor, initially was CM III, the Debtor's majority interest holder.

23

24   CM III was operated variously under the direction of Aaron Hazelrigg and/or Thomas

25   Hazelrigg III.

26

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

On September 24, 2009, by Company Resolution, CM III was replaced by SMI as Managing Member. SMI's role as Managing Member was confirmed both by Aaron and Tom Hazelrigg, and more recently by the Benton County Superior Court by Court Order dated May 28, 2010.

The Debtor is presently managed by its sole managing member, SMI Group XIV, LLC and governed by the Limited Liability Company Agreement dated August 1, 2006 as amended by subsequent documents dated September 24 and September 25, 2009.

C.     <u>History of the Battelle Property.</u>

The Battelle Property consists of five buildings, related improvements and common areas located on the Battelle Property. Four of the buildings comprising of the Battelle Property are used as Class A office space and computer server/data centers. The fifth building is an 84-bed facility for residential housing, used by the tenant to accommodate both short and long term stay on the campus.

Originally, the Battelle Property was bare ground and was leased to Sigma Financial Group VI - X, L.P.(s) ("Sigma Financial") under five separate, long-term ground leases set to expire between September 30, 2051 and September 30, 2060. Sigma Financial then built buildings and related improvements on the land, even though it did not own the land. After completion of the buildings and improvements,

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Sigma Financial leased those buildings and improvements back to Battelle through five separate shorter term facilities leases (the "Facilities Leases"). Accordingly, Battelle is both the Ground Landlord and the Facilities Tenant for each of the five buildings.

Under the Ground Leases, the ground tenant pays Battelle ground rent. Under the Facilities Leases, Battelle pays its landlord (i.e., the ground tenant) a Base Rent amount, and also a "Service Rent" which includes all actual, documented and approved expenses incurred in connection with each portion of the property, including management, fees, maintenance, etc.

The original Base Rent was established in the Facility Lease for each facility and the current Base Rent was established in Lease Supplements for each facility. The following is a listing of the Facility Lease Agreement Numbers for each of the facilities and the corresponding Lease Agreement Numbers for each of the facilities, the corresponding Lease Supplements that established the current Base Rent rate, along with extension of the lease terms for each facility to the current lease end date:

ISB I – LEASE AGREEMENT NO. 052241-C-N2 – Lease Supplement No. 19

ISB II – LEASE AGREEMENT NO. 146541-D-N2 – Lease Supplement No. 19

NSB – LEASE AGREEMENT NO. 169833-D-N2 – Lease Supplement No. 23

ETB – LEASE AGREEMENT NO. 248370-D-N2 – Lease Supplement No. 16

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

UHF – LEASE AGREEMENT NO. 430410-D-N2 – Lease Supplement No. 10

The Chart below depicts the breakdown of Ground Rent between the facilities.

| Building | Physical Address | Designation | Former Designation | Tenant | Square Feet | Lease End Date | Monthly NNN Base Rent | Annual Base Rate/sf |
|----------|------------------|-------------|--------------------|--------|-------------|----------------|----------------------|--------------------|
| Information Sciences Building I | 3350 Q. Avenue, Richland, WA | ISB I | SIGMA VI | Battelle | 50,200 | 30-Sep-17 | $82,620.83 | $19.75 |
| Information Sciences Building II | 3320 Q. Avenue, Richland, WA | ISB II | SIGMA VII | Battelle | 60,080 | 30-Sep-17 | $98,881.67 | $19.75 |
| National Security Building | 3230 Q. Avenue, Richland, WA | NSB | SIGMA VIII | Battelle | 100,358 | 30-Sep-18 | $172,699.39 | $20.65 |
| Environmental Technology Building | 3200 Q. Avenue, Richland, WA | ETB | SIGMA IX | Battelle | 100,358 | 30-Sep-18 | $172,699.39 | $20.65 |
| User Housing Facility | 620 Battelle Blvd., Richland, WA | UHF | SIGMA X | Battelle | 29,108 | 30-Sep-18 | $29,108.00 | $12.00 |
| | | Total Square Feet | | | 340,104 | | | |

The monthly base rent on the property totals approximately $556,009.28.

1.   *Management by Sigma.*

Sigma Financial entered into a new Management Agreement with Sigma Management, Inc. ("Sigma"), on December 17, 2001 (Sigma Management provided project management services for the original construction of all five facilities and has managed the property ever since).   Pursuant to the terms of the Management Agreement, and Management Agreement Supplement of October 1, 2005, Sigma is the exclusive manager of the Battelle Property and provides complete operational

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

services as well as all lease negotiations, accounting, recordkeeping and administrational requirements. In addition to Ground Rent, Battelle pays all the actual operating expenses for the operation of the facilities through a Service Rate. The Service Rate is paid by Battelle on a monthly basis as "Service Rent," as per the terms established in the Facility Lease Agreements, and as revised in the Lease Supplements (listed above). The Service Rate is not revenue for the Debtor. 100 percent of the monies paid by Battelle through the Service Rate are for the operation of the facilities. Components of the Service Rate include utilities, maintenance, taxes, insurance, ground rent, and management fees, including administrative overhead. Management Fees on costs falling under Service Rate are negotiated and approved by Battelle and contractually established and defined in the Facility Lease Agreements and Supplements thereto, at 4.6 percent of gross rent; the entire Management Fee is paid to Sigma, CPIII is merely a conduit for those fees and the other operating expenses and has no claim or rights in the Service Rent.

Monthly Service Rate budgets are established yearly through negotiation with Battelle. After conclusion of the Service Rate year for each facility, actual costs for the operation of the facilities through the Service Rate year are compared to the established budget for the same time period. To adjust for any difference between the negotiated budget amount and actual expenses, a reconciliation payment is received

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

from or a reconciliation credit is provided to Battelle. Projecting our for the balance of this calendar year, actual operating expenses will likely exceed the Service Rate budged and CPIII will be required to extend funds and receive a reconciliation payment. This is the contractual arrangement under the Facility Leases Agreements, but CPIII will be unable to perform as required unless the Court suspends GECC's lock box.

In 2006, Sigma Financial decided to sell its interests in the Battelle Property. SMI entered into an agreement to purchase the Original Ground Tenant's interest in the Battelle Property, its leasehold interests as Ground Tenant under the Ground Leases, and interests as the owner of the buildings and improvements located on the land.

SMI entered into negotiations with General Electric Capital Corporation ("GECC") as a potential lender for the purchase of the Battelle Property Ground Tenant interests. As GECC required SMI to find additional investors, SMI associated with Thomas R. Hazelrigg III in 2006. On August 1, 2006, the newly created investment group formed the Debtor to complete financing with GECC and hold ownership of the Battelle Property.

When the Debtor purchased Sigma Financial's interest in the Battelle Property, it reaffirmed the original Management Agreement and Management Agreement

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Supplement with Sigma. Sigma maintains the long term service and management contracts with the Debtor.

2.  *GECC Financing.*

On November 8, 2006, the newly formed Debtor entered into a Loan Agreement with GECC. The Loan Agreement (the "Loan") for $70,866,000.00 is secured, among other things, by a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (Leasehold Estates) dated November 28, 2006, and recorded November 29, 2006, in the Official Records of Benton County, Washington as Document No. 2006-039335. The Deed of Trust encumbers the Property.

Pursuant to the terms of the loan, the Debtor was required to make monthly payments based upon an interest rate of 6.36 percent which is roughly $330,00.00 per month. The loan matured by its terms on November 30, 2009. The Debtor did not repay the loan on November 30, 2009.

D.  Factors Precipitating Chapter 11.

1.  *GECC Default.*

On September 23, 2008, GECC served a Default Notice on the Debtor. GECC also demanded all rents be deposited into a "lockbox". Since October, 2008, GECC collected all monies paid by Battelle in payment for all of CPIII facilities for Base

DISCLOSURE STATEMENT - 17

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

10-04024-FLK11    Doc 160    Filed 01/20/11    Entered 01/20/11 17:00:20    Pg 17 of 54

Rent, Service Rent, and Task Orders. Pursuant to the terms of the lockbox agreement, GECC, in its sole discretion and upon proper application, had the ability to disburse the Service Rate and Task Order income to CPIII and Sigma.

GECC posted a default notice on the subject property and CPIII on January 8, 2010 as a first step in foreclosing their deed of trust. On February 11, 2010 GECC filed a Complaint in Benton County Superior Court, Case No.10-2-00372-7 against the Debtor seeking appointment of a receiver. After continued negotiations with GECC, the Debtor was able to avoid the appointment of a Receiver, continue the pending Trustee's Sale, and continue with negotiations for forbearance of the loan.

        2.    *Disputed Secured Loan/Litigation.*

Almost immediately upon closing and funding of the GECC loan, Thomas Hazelrigg and Aaron Hazelrigg, through the then managing member CM III, and to the detriment of the company, began to orchestrate a series of ultra vires transactions for their own personal financial gain. In one instance, Thomas Hazelrigg directed the sum of $2.1 million for closing proceeds of the GECC loan to his bank accounts under his control. On another occasion, Thomas Hazelrigg directed the sum of $3.22 million for a GECC funding release to bank accounts under his control. The actions of Mr. Hazelrigg deprived the Debtor of much needed cash, causing significant and irreparable harm to the Debtor's financial future. Furthermore, at the time of the

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

GECC loan, acting manager CM III, through its representative Aaron Hazelrigg, confirmed that in consideration of the acquisition loan, both the GECC Loan Agreements and governing company agreements would provide for restrictive language preventing the Debtor from further encumbering the property without proper unanimous consent.

Despite knowledge of the prohibitions against further encumbrance of the Debtor's property, Aaron and Thomas Hazelrigg without authority, without authorization, and through manipulation of managing member CM III and in conjunction with Equity Funding, LLC, Centrum Financial Services and Trident Investments, Inc., placed unauthorized encumbrances/liens against the property in the form of four deeds of trust and a right to sale proceed instrument, including:

(1) a leasehold deed of trust signed by Aaron, for the benefit of CFS recorded on July 10, 2007, which purposed to secure a loan from Centrum to CPIII for $10 million in principal made between February and July 2007, CPIII never received any such loan, it is not in the Company's books.

(2) a leasehold deed of trust signed by Hazelrigg for the benefit of CFS recorded on March 5, 2008 which purports to secure a continuing guaranty of an unstated dollar amount CPIII allegedly gave on March 5, 2008 to benefit CFS – no amount is stated in this deed of trust.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

(3) a leasehold deed of trust signed by Hazelrigg for the benefit of Equity Funding recorded on April 7, 2008 which purports to secure a continuing guaranty of an unstated dollar amount CPIII allegedly gave to benefit Equity Funding – no amount is stated in this deed of trust.

(4) a leasehold Deed of Trust signed by Hazelrigg for the benefit of Trident recorded on November 5, 2008 which purports to secure a continuing guaranty of an unstated dollar amount CPIII allegedly gave to benefit Trident – no amount is stated in this deed of trust.

(5) a Memorandum of Agreement signed by Derek Edmonds, listing CPIII as grantor and Trident as grantee recorded November 6, 2008, and describing an underlying agreement whereby all "net sums" that would otherwise be paid to CPIII in connection with the sale of the Subject Property were to be paid by giving CPIII certain undefined "notes receivable."

The Debtor's company records indicate that such transactions were never authorized and were not ratified by the Debtor, its members or its managers. These were ultra vires acts. Furthermore, CPIII did not receive any consideration in exchange for this unauthorized pledge of security.

Upon learning of the improper, unauthorized, and illegal activities and in conjunction with the default of the GECC loan obligation, SMI, as manager of the

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Debtor, commenced litigation in Benton County Superior Court, State of Washington, identified by Case Number 10-00301-8.

### 3. Court Enjoins Equity Funding, Centrum Financial, and GECC from Foreclosing on Debtor's Property.

On February 19, 2010, in the Benton County matters, the Court granted the Debtor's Motion enjoining the Defendants Equity Funding from foreclosing on their purported deeds of trust.

Although Equity Funding was enjoined from foreclosing, GECC continued with its Trustee's Sale. Subsequently, Equity Funding moved to stay GECC's proposed Trustee's Sale. After briefing and hearing, the Benton County Court stayed GECC's proposed June 25, 2010 Trustee's Sale, until further Order of Court.

Although the pending Trustee's Sale and the Debtor's property have been enjoined, its financial issues have not been solved, necessitating the filing of this Chapter 11 bankruptcy proceeding.

### E. Events Since the Petition Date.

No trustee or examiner has been appointed in the case, nor has any official committee of creditors been appointed. On July 13, 2010, CPIII filed a motion seeking the use of cash collateral. (Docket No. 3). CPIII and GECC later agreed to the terms of a Cash Collateral order and on September 19, 2010, the Court entered a

DISCLOSURE STATEMENT - 21

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

10-04024-FLK11    Doc 160    Filed 01/20/11    Entered 01/20/11 17:00:20    Pg 21 of 54

stipulated order authorizing the use of cash collateral through December 31, 2010. (Doc. No. 79).

The Stipulated Order included a Budget, which detailed the use of the cash collateral. Among other things, the Order permits continued day to day management and operations of the Battelle Property. The Order also provided for monthly adequate assurance payments to GECC of $330,000.00.

Prior to the December 31, 2010, expiration of the Cash Collateral Order, CPIII requested GECC agree to extend the Order another three months subject to a proposed second budget. Subsequently, the Debtor and GECC agreed to the entry of a Second Stipulated Order, entered by the Court on December 30, 2010, extending the use of cash collateral through March 31, 2011, subject to the proposed second budget. (Doc. No. 147).

The Claims Bar Date in this Chapter 11 proceeding passed on November 24, 2010. In addition to the foregoing events, the following events and/or relief have been sought or granted post-petition:

- Order Approving Crumb & Munding, P.S. as counsel for the Estate (Docket No. 44)

- Order Approving/Assuming Management Contract with Sigma Management, Inc. (Docket No. 84)

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

- Motion to Assume Leases with Battelle (Docket No. 84)

- Order Approving Special Litigation Counsel for Jeff Sperline (Docket No. 107)

- Order Approving Accountants Marple & Marple, P.S. (Docket No.108)

- Order Determining Single Asset Real Estate Status (Docket No. 133)

- Order Approving Special Finance Counsel (Docket No. 157)

F.   Litigation.

   1. *Centurion Properties III, LLC v. Thomas Hazelrigg III*, Case No.80118-FLK, United States Bankruptcy Court Eastern District of Washington.

On February 4, 2010, CPIII in conjunction with SMI Group XIV, LLC commenced litigation in Benton County Superior Court, State of Washington. The Complaint named alleged secured claimants, interest holders and equity interest holders as defendants, including Tom Hazelrigg III, Aaron Hazelrigg, Barclay's North, Inc., Centrum Financial, Jim Denton, Equity Funding, LLC, Evergreen Bank, John Does, Nicole Kelly, Daniel Kirby, Patrick McCourt and Trident Investments. The suit plead and sought relief on ten (10) separate Causes of Action varying from injunctive relief for RICCO. The underlying factual premise for the Complaint is

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
·SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

based upon the improper, unauthorized, and illegal activities surrounding the encumbrance of the Debtor's interest in the Battelle Property.

This case was removed and is now being pursued in the Bankruptcy Court for the benefit of the Estate.

    2.  *Centurion Properties III, LLC v Equity Funding, LLC et al,* Case No. 10-80137-FLK, United States Bankruptcy Court Eastern District of Washington.

Post-Petition, the Debtor was informed that certain entities, individuals, and disputed creditors were engaged in certain conduct, including attempts to market, convey, and sell the Debtor's interest in the Battelle Property. As such, The Debtor prose commenced litigation for a declaratory judgment that the automatic stay had been violated and sought an injunctive preventing such further activities. The Defendants deny they have engaged in such activity.

An agreed "Order Approving Stipulation to Agree Injunctive Relief and Declaratory Judgment as to Automatic Stay Violation" has been entered (Docket No. 14). The Debtor continues to pursue this Cause of Action to prevent further harm to the Estate.

DISCLOSURE STATEMENT - 24

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

# V.    SUMMARY OF THE DEBTOR'S FINANCIAL STATUS

The Debtor's financial status is summarized as follows:

A.    Operations. The Debtor continues to operate its business affairs and is compliant with U.S. Trustee Reporting requirements. The post-petition operating reports reflect:

**Centurion Operating Report Net Profit Summary**

| Month | Dates | Docket # | Net Profit (Loss) |
|---|---|---|---|
| July | 7/01/10 - 7/31/10 | 45 | $   853,314.33 |
| August | 8/01/10 - 8/31/10 | 73 | $   532,811.39 |
| September | 9/01/10 - 9/31/10 | 83 | $   (936,212.20) |
| October | 10/01/10 - 10/31/10 | 106 | $   372,061.11 |
| November | 11/01/10 - 11/31/10 | 128 | $   (506,650.08) |

| | TOTAL | $   315,324.55 |
|---|---|---|

B.    Assets.

1.    Real Property. The Battelle Property Per Appraisal June 9, 2008 – approximately 98,000,000.

2.    Personal Property. The Debtor's personal property is subject to the Security Interest of GECC. However, the personal property is identified as of December 31, 2010:

- Estimated Cash Reserves As of $1,884,798.77

DISCLOSURE STATEMENT - 25

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
(509) 624-6464
SPOKANE, WA 99201
FAX (509) 624-6155

- Accounts Receivable Current to 30 days $187,170.62

3.  Contingent Claims/Litigation.

- *Centurion Properties III, LLC, et al., v. Thomas Hazelrigg III, et al.,* Adversary No. 10-80118-FLK. Value to be determined.

- *Centurion Properties III, LLC v. Equity Funding, et al.,* Adversary No. 10-80137-FLK. Value to be determined.

A detailed listing of the Debtor's assets is attached hereto as Exhibit "A."

C.  Claims and Interests.

1.  Administrative Expenses.

There are two categories of Administrative Expenses. The first is for the costs of operating the Estate and the Battelle Property and U.S. Trustee fees. The Debtor currently estimates this liability to be less than $1,000.00 as the Debtor has been paying these expenses in the ordinary course pursuant to the Cash Collateral Order.

The additional management fee was approximately $45,000.00 through December 31, 2010, which was budgeted for and has accrued. However, application for payment will be made to the Court prior to payment. The second is Estate professionals, who also remain subject to Court review and approval. The Estate professionals include CPIII's bankruptcy counsel John D. Munding of Crumb &

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Munding, P.S. and other professionals employed for the benefits of the Estate who included:

- Special Finance Counsel – Randy Stamper of Stamper Rubens, P.S.
- Accountants – Marple & Marple, Inc.
- Special Counsel – Jeff Sperline of Sperline Raekes, PLLC

Code Section 1129(a)(4) requires that all costs for services incurred by the Plan proponent be disclosed and approved by the Court. Since the Petition Date and through December 31, 2010, the Estate professionals have incurred fees and costs which, to the extent not previously approved, will be approved as part of the confirmation process. An estimate of such fees is attached hereto as **Exhibit "B."**

        2.   Prepetition Claims.

A detailed listing of the Claims against the Debtor is attached hereto as **Exhibit B.** It is anticipated that (a) not all of these Claims will be determined to be Allowed Claims entitled to payment; and (b) others may be compromised in amount.

## VI.   **PLAN OF REORGANIZATION**

    A.   Summary of the Plan.

The Plan provides for the reorganization of Debts and the continued ownership and operation of the Battelle Property. The Debtor will continue with litigation to determine the nature, extent, and amount of the debt owed to certain Classes of

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Creditors holding disputed Claims. The Plan provides for the refinancing of Allowed Secured Claims and payment to other Classes of Claims using ongoing revenue derived from lease payments. The Plan is intended to be fully consummated within thirty six (36) months, with payment in full of all Allowed Claims.

B. Classification and Treatment of Expenses, Claims, and Interests.

1. Treatment of Unimpaired (Non-Voting) Classes.

a. Class 1 – Administrative Expenses. All Unimpaired Classes and Allowed Claims in those Classes, unless paid sooner pursuant to an order entered by the Court, will be paid on the first business day of the month following the Effective Date. The following Classes of Administrative Expenses and Claims are Unimpaired under the Plan. Pursuant to § 1126(f) of the Bankruptcy Code, each such class, and each holder of an Administrative Expense or Claim in such class, is conclusively presumed to have accepted the Plan, and the solicitation of acceptances from such holders is not required.

b. Class 2 – Priority Claims. The holders of Allowed Class 7 Claims, if any, shall be paid in full on the first business day of the month following the Effective Date, in accordance with their respective legal, equitable, and contractual rights. The Debtor does not believe there are any Priority Claims. This Class is not Impaired and is deemed to have accepted the Plan.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

c.      Class 3 – Membership Interests in the Debtor. CPIII recognizes the following membership interests in the Debtor:

1. Nicole M. Kelly 10%

2. Centurion Management III, LLC 63%

3. SMI Group, XIV, LLC 27%

Although the interests of Kelly and Centurion Management III, LLC are subject to offset and forfeiture, the ownership is of record and shall be retained pursuant to this plan, subject only to offset, modification, or determination by Court order entered in Adversary Proceeding 10-80118. This Class is not Impaired and is deemed to have accepted the Plan.

2.      Treatment of Impaired (Voting) Classes.

a.      Class 4 – Secured Claim of GECC. This is a secured consensual lien on the Battelle Property, leasehold interest of CPIII, as well as specified personal property of CPIII. The holder of the claim in this class shall accrue interest at the rate of six and thirty-sixths (6.36%) per annum on account of its Allowed Claim. Beginning on the first business day of the month following the Effective Date, the holder of the claim shall receive monthly payments of interest only. At the end of 36 months GECC shall be paid in full any unpaid amount, if any, of its Allowed Claim.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
(509) 624-6464
SPOKANE, WA 99201
FAX (509) 624-6155

The monthly interest payment is calculated at $58,258,354.15 x 6.36% = 3,705,231.32 /12 months = $308,769.28. GECC shall retain its lien of security interest in the real property/leasehold interests of CPIII, including cash collateral, until its Allowed Claims is paid in full. However, so long as the Debtor makes each payment described herein, the Debtor shall be entitles to use all Base Rents, Service Rents and Task Order Payments received in the ordinary course of business affairs, and for purposes of funding this Plan of Reorganization. The Debtor reserves the right to challenge GECC's claim to default interest, penalties, and legal fees through the claims objection process. This class is Impaired.

        b.      Class 5 – Secured Claim of Benton County Treasurer. This is a secured tax. The County of Benton, Washington, is the only holder of a Class 5 claim. The County's claim is believed to have been paid, but additional taxes may be due and owing by the time of confirmation. To the extent not paid. Class 5 shall be paid in full within 60 days following the Effective date, with all statuary interest and penalties. Until paid the amount of its Allowed Claim, the County shall retain any lien that secured its claim. This class is Impaired.

        c.      Class 6 – Secured Umpqua Bank. Class 6 consists of the disputed secured claim of Umpqua Bank. The nature and extent of this claim, amount, and lien status are disputed. The holder of the claim shall accrue interest at the rate of

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

DISCLOSURE STATEMENT - 30

five (5%) per annum on account of its Allowed Claim. Beginning on the first business date of the month following the Effective date, or the date upon entry of a final order allowing this claim, whichever is later in time, the holder of the Class 6 claim shall receive equal monthly payments of interest only. At the end of 36 months, Class 6 shall be paid in full in outstanding unpaid amount, if any of its allowed claim.

Umpqua Bank, to extent allowed, shall retain its security interests and lien until its Allowed Claim is paid in full. This Class is Impaired.

    d.    Class 7 - Secured Claim of Centrum Financial Services, Inc.
Class 7 consists of the disputed secured claim of Centrum Financial Services, Inc. The nature and extent of this claim, amount, and lien status are disputed. The holder of the claim shall accrue interest at the rate of five (5%) per annum on account of its Allowed Claim. Beginning on the first business date of the month following the Effective date, or the date upon entry of a final order allowing this claim, whichever is later in time, the holder of the Class 7 claim shall receive equal monthly payments of interest only. At the end of 36 months, Class 7 shall be paid in full in outstanding unpaid amount, if any of its allowed claim. This class is Impaired.

    e.    Class 8 - Secured Claim of Equity Funding, LLC.  Class 8 consists of the disputed secured claim of Equity Funding, LLC. The nature and extent of this claim, amount, and lien status are disputed. The holder of the claim shall accrue

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

interest at the rate of five (5%) per annum on account of its Allowed Claim. Beginning on the first business date of the month following the Effective date, or the date upon entry of a final order allowing this claim, whichever is later in time, the holder of the Class 8 claim shall receive equal monthly payments of interest only. At the end of 36 months, Class 8 shall be paid in full in outstanding unpaid amount, if any of its allowed claim. This class is Impaired.

               f.    Class 9 – Insider Unsecured Claims Centurion Pacific, LLC and Centurion Southwest, LLC. Class 9 consists of the unsecured claims of Centurion Pacific, LLC and Centurion Southwest, LLC, who are believed to be insiders. Both claims are disputed by CPIII as to the amount and nature. The holder of an allowed Class 9 claim shall accrue interest at five (5%) percent per annum on account of its Allowed Claim. Class 9 shall be paid in full with the outstanding unpaid amount, if any, of their Allowed Claim within 36 months after the Effective date. This Class is Impaired.

Equity Funding, LLC, to extent allowed shall retain its security interests and lien until its Allowed Claim is paid in full. This Class is Impaired.

               g.    Class 10 – General Unsecured Creditors. The holder of an allowed Class 10 claim shall accrue interest at the rate of six (6%) present per annum

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

on account of its Allowed Claim. The holder of an Allowed Class 10 Claim shall be paid within ninety (90) days of the Effective date, with interest.

        h.    <u>Class 11 – Insider Unsecured Claim Sigma Management, Inc.</u> The holder of an allowed Class 11 claim shall accrue interest at the rate of six (6%) present per annum on account of its Allowed Claim. The holder of an Allowed Class 8 Claim shall be paid within ninety (90) days of the Effective date, with interest.

    C.    <u>Administration of the Plan.</u>

        The Plan provides for the appointment of the Debtor as the Plan Disbursing Agent to collect, administer and distribute assets in accordance with the terms of the Plan. The Debtor will receive no compensation for acting as the Plan Disbursing Agent.

        The Plan Disbursing Agent will be authorized to employ legal and accounting professionals necessary to carry out the provisions of the Plan; provided, however, that prior to Substantial Consummation, any such employment shall be subject to Court approval. Whenever the Plan, Code, Rules or documents implementing the Plan require or permit notice to the Debtor after the Effective Date, such notice shall be effective only when also given to the Plan Disbursing Agent. Unless terminated sooner, the Plan Disbursing Agent shall serve until the Plan is fully consummated.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

D.   Unclaimed Funds and Interests.

For a period of two months from the date of the disbursement, the Plan Disbursing Agent shall retain any distribution hereunder, which remains unclaimed. Thereafter, the Claims giving rise to the right to distribution of such unclaimed funds will be deemed disallowed and any unclaimed funds, net of expenses, will be redistributed pro rata to the remaining creditors, except that (i) no redistribution will be made to any creditor whose pro rata share of the funds to be distributed does not exceed $50 and (ii) no further distribution shall be made if the total amount of unclaimed funds do not exceed $500 plus the costs of distribution.  If the amount of unclaimed funds does not exceed $500 plus the costs of distribution, such funds will be retained by the Plan Disbursing Agent as reimbursement for expenses in administering such unclaimed funds.

E.   Disputed Claims.

Not later than sixty (60) days after the Effective Date, the Debtor may file with the Bankruptcy Court, and serve on the holder of each Disputed Claim (i) an objection to any Claim, or (ii) a motion to determine the extent, priority, or amount of any secured or other Claim.  All such Claims are preserved in the Plan.  Any Creditor, including those expressly discussed above, that wishes to have its Claim determined by the Court to be a secured or priority Claim, must file with the Court a motion

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

seeking that determination not later than the Confirmation Date or file a timely response to the Debtor's objection if such objection is filed. To the extent that (a) the Debtor objects to any filed Claim or (b) a Creditor seeks to have a Claim that the Plan treats as a general unsecured Claim determined to be secured or to have priority, sufficient funds shall be withheld from distributions for the estimated payment of such claim under the Plan until any such objection or determination has been resolved by an order of the Court. No distributions will be made on any Disputed Claim until such Claim is Allowed or the secured or priority status is determined.

## FUNDING OF THE PLAN

F.    <u>Initial Plan Funding</u>

1.    <u>Replacement Financing.</u> The Plan will be funded from encumbered and encumber cash on hand, the continued operating revenue of the Battelle Property, the net proceeds of any causes of action, and replacement financing for Allowed Claims. CPIII has employed the services of Randal Stamper to assist it in its quest to obtain commercial financing in an amount necessary to satisfy all allowed secured debt obligations and other obligations under this Plan. Such efforts are under way and continuing. The foregoing will either be conventional financing or bond financing. Interest rates are presently at historical lows. Although the commercial credit market is tight at this time, the historical cash flow and financial strength of the

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

tenant make a strong candidate for refinancing. Distributions under the Plan shall be made to the Allowed Claimants by the Disbursing Agent, who shall report on actively in this account in periodic reports to the Court.

2. <u>Rents.</u> Upon confirmation the Debtor shall commence making monthly interest payments to secured lender GECC in the amount of $308,769.28. This payout shall be made from monthly Base Rents and Service Rents received from Battelle. Any Rents received in excess of the $308,769.28 GECC payment shall be available to and utilized by the Debtor for the Plan Funding, as well as operations. The Debtor's projections for the cash flow to be received from the operations of the Battelle Property are attached as **Exhibit C.**

3. <u>Litigation Claims.</u> Any sums recovering by causes of action brought by the Estate, net of the attorney fees and costs associated with bringing the cause of action shall be used to fund the Plan, unless all payments required by the Plan have been made, in which case those sums shall accrue to the Reorganized Debtor.

4. <u>Claims Adjustment.</u> The Debtor reserves the right to object to any claims, pursuant to the procedures set forth in the Plan. Distributions under this Plan shall be made to Allowed Claimants by the Debtor or Reorganized Debtor, as appropriate, who shall report on activity in this account in periodic reports to the Court.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

G.    Contingency Plan Funding.

In the event that all causes of action brought by the Estate is not resolved within 36 months of the Effective date, or in the event that the allowed secured and/or allowed unsecured cause replacement financing to be unattainable, the Debtor shall immediately commence efforts to market and sell the above referenced property in a commercially agreeable manner that is acceptable and agreeable to all allowed secured claimants.

At such time, this will become a liquidating plan, with distribution of assets being made in accordance with priority of liens and 11 USC Section 507 of the Bankruptcy Code.

H.    Feasibility of the Plan and Best Interests Test.

The Bankruptcy Code requires that, for the Plan to be confirmed, the Debtors must demonstrate that consummation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors. The Debtors believe that they will be able to timely perform all obligations described in the Plan and, therefore, that the Plan is feasible. To demonstrate the feasibility of the Plan, the Debtors have prepared financial information contained herein. The Debtors believe the Plan satisfies the feasibility requirement of Section 1120(a)(11) of the Bankruptcy

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
(509) 624-6464
SPOKANE, WA 99201
FAX (509) 624-6155

Code as it provides for payment of allowed claims using financial resource in an expeditious manner.

I.   <u>Risks of the Plan.</u>

Risks involve various market risks.  One involves the rental market risk, *i.e.*, whether the Property will continue to produce the same rents and cash flow going forward.  If this does not occur, there is a risk that the cash flow from operations will be inadequate to fund the Plan over its term.

Another involves the real estate and credit markets generally, *i.e.*, whether or not the values of real estate will stabilize and result in a market where purchases are again common and whether credit markets will stabilize so that lending to these types of business ventures again becomes readily available.  If these do not occur, the balloon payments required by the Plan may not be possible.

J.   <u>Alternatives to Reorganization – Liquidation Analysis.</u>

The Bankruptcy Code requires that each holder of an impaired claim either (i) accepts the Plan, or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

The first step in meeting this test is to determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case. The gross amount of cash available would be the sum of the proceeds from the disposition of the Debtors' assets and the cash held by the Debtors at the time of the commencement of the chapter 7 case. The next step is to reduce that total amount by the amount of any claims secured by such assets, the costs and expenses of liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtors' business and the use of chapter 7 for the purposes of liquidation. Any remaining net cash would be allocated to creditors in strict priority in accordance with section 726 of the Bankruptcy Code. Finally, the present value of such allocations (taking into account the time necessary to accomplish the liquidation) is compared to the value of the property that is proposed to be distributed under the Plan on the Effective Date.

The debtor estimates the fair market value of the Property to be approximately $98,000,000.00 based upon its most recent appraisal. GECC may assert that the fair market value is less and asserts a Secured Claim in excess of $58 million, plus accruing interests and costs. If the Estate were liquidated, the Property would either be sold by the Debtor or taken back by GECC and sold at Trustee's sale (if sold by GECC presumably for less than 98,000,000.00).

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

The Plan provides for the payment of all Allowed Claims, both secured and unsecured, in full with interest. A liquidation sale, including a foreclosure type sale, with normal costs of sale, would certainly generate net sales proceeds far less than the estimated $98 Million FMV (which value assumes a more orderly sales process, with a willing buyer – and a willing seller). Liquidation could produce sales proceeds inadequate to provide any payment to junior lien holders and unsecure creditors, as called for in this Plan. A summary of this analysis is contained in the attached **Exhibit D.**

      K.    <u>Executory Contracts and Unexpired Leases.</u>

      1.    <u>Prepetition.</u> Prior to confirmation, the following leases and Executory Contracts have been or will be assumed:

      • Sigma-Management, Inc., Management Contract Order (Docket No. 84)

      • Battelle Ground and Property Leases, Motion pending (Docket No. 81)

These contracts and leases are assumed on the effective date as part of this Plan to extent not assumed by prior order. The Debtor does not believe it has any other leases or Executory Contracts. Any Claims filed pursuant to a rejected prepetition Executory Contract (if any) shall be subject to objection by the Debtor and to consideration by the Court. If any such Claim becomes an Allowed Claim, it shall be a Class 8 General Unsecured Claim.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

2.    <u>Post-Petition.</u> All post-petition leases and executory contracts are assumed as of the Effective Date. Any Claims resulting from the rejection of a post-petition Executory Contract (if any) shall be filed within thirty (30) days of entry of the Confirmation Order or such Claims are waived and deemed not allowed. any such Claims shall be subject to objection by the Debtor and to consideration by the Court. If any such Claim becomes an Allowed claim, it shall be a Class 8 General Unsecured Claim.

L.    <u>Causes of Action.</u>

The Debtor or Reorganized Debtor retains the Causes of Action to be enforced post-confirmation, including but not limited to:

1.    Any avoidance recovery action, preferential transfer action, or fraudulent transaction for the benefit of the Estate.

2.    Those claims and causes of action as plead in Adversary Case No. 10-80118.

3.    Those claims and causes of action as plead in Adversary Case No. 10-80137.

M.    <u>Post-Petition Management, Employees, and Professionals.</u>

1.    CPIII will continue to be managed by Sigma Management, Inc. pursuant to the management agreement assumed pre-confirmation and as part of this

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Plan. Sigma Management, Inc. will continue to manage the financial affairs of CPIII, its property interests, and oversell Plan consummation. CPIII, through management by Sigma Management, Inc. shall have full and complete authority to implement and consummate the provisions of this Plan, including financing and disposition of assets. CPIII, through management shall have the authority to continue, prosecute, compromise, and settle without further Court approval on any and all pending litigations or claims. Furthermore, CPIII, through management shall act as claims resolution agent relate to liquidation of disputed claims asserted in this bankruptcy proceeding. CPIII shall be authorized to compromise, prosecute and settle all disputed claims against the Estate.

        2.    The Debtor shall retain and pay the following professionals post confirmation:

- Crumb & Munding, P.S. – Attorneys

- Jeff Sperline, Sperline Raekes, PLLC, Special Counsel

- Randall Stamper, Stamper Rubens, P.S., Special Finance Counsel

- Marple & Marple, P.S. - Accountants

If necessary, CPIII may employ professionals to sell real or personal property interest. CPIII shall seek Court approval and secured lender approval if such employment becomes necessary.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

3. **Unsecured Creditors Committee.**

No unsecured Creditors Committee was appointed in this case.

4. **Payment of Management and Professionals.**

Pre-Confirmation professionals shall be paid based upon allowed claims or approved fees by Court Order as Administrative Expense Claims. Post-Confirmation professional fees and expenses insured after the date of Confirmation shall be paid directly by CPIII from available Excess Rents.

N. **Continuation of Business.**

CPIII will continue to hold, operate, and manage its real and personal property interests as an ongoing business.

O. **Insider Transactions/Avoidance Actions.**

CPIII has not yet completed investigation of any/all insider transactions subject to avoidance under sections 547, 548, and 550. Prior to the hearing on Disclosure Statement, CPIII sjall supplement this section of the Disclosure Statement.

P. **Payment of Professionals.**

As of the date of this Disclosure Statement, no professionals have sought nor have they received payment of professional fees. All pre-confirmation fees shall be subject to application and Court approval.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Q.     <u>Plan Modification.</u>

The Debtor may modify or amend the Plan at any time prior to Confirmation with Court approval if such modifications do not adversely or materially affect the rights of the Creditors, or to remedy any defect or omission or to correct any inconsistency of the Plan.

R.     <u>Court Jurisdiction.</u>

The Court shall retain jurisdiction over this Estate as set forth in the Plan. This jurisdiction includes, but is not limited to, matters involving interpretation, correction, modification or reconciliation of any inconsistencies in the Plan, entry of any order deemed necessary and appropriate by the Court to implement the Plan, and adjudication of all causes of Action, including but not limited to all pending adversary proceedings, litigation, and claim objections.

S.     <u>Retention of Documents.</u>

The Plan Disbursing Agent shall retain records of disbursements under the Plan for such time as attorneys are generally required to maintain records of distributions from their trust accounts, after which time they will be destroyed, unless ordered retained for cause.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

# VII. ACCEPTANCE AND CONFIRMATION

### A. Acceptance of Plan by Impaired Class.

The "cram down" provisions of § 1129(b) of the Code are applicable to Confirmation because there are several Impaired Classes in the Plan.

### B. Alternatives to the Plan and Liquidation Analysis.

1. The Alternatives to the Debtor's Plan of Reorganization is Liquidation Under Chapter 7. See § VI-J above for a discussion of the liquidation analysis.

2. United States Trustee Fees. Until the Chapter 11 case is closed, the Debtor must file post-confirmation reports and pay quarterly fees under 28 U.S.C. § 1930(a)(6) which are paid for with Estate funds. However, the Debtor will act to close the case as quickly as possible, thereby reducing the amount of such fees.

# VIII. SOURCE OF INFORMATION

The primary source of information for this Disclosure Statement is the Debtor. Other sources include documents provided by Sigma Management, Inc., an agent of CPIII.

# IX. TAX CONSEQUENCES

A summary description of certain United States federal income tax consequences of the Plan follows. This description is for informational purposes only and, owing to a lack of definitive judicial or administrative authority or interpretation,

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

substantial uncertainties exist with respect to various tax consequences of the Plan discussed below. This disclosure describes only the principal United States federal income tax consequences of the Plan to the Debtor and to holders of Claims and Equity Interest. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan. No rulings or determinations of the Internal Revenue Service ("IRS") or any other tax authorities have been sought or obtained with respect to any tax consequences of the Plan, and the discussion below is not binding on the IRS or other authorities. No representations are being made to the Debtor or any holder of a Claim or Equity interest regarding the particular tax consequences of the Confirmation and Consummation of the Plan. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed here.

The following discussion of the United States federal income tax consequences is based on the Internal Revenue Code of 1986, as amended, Treasury Regulations, judicial authorities, published positions of the IRS and other applicable authorities, all as in effect on the date of this document and all of which are subject ot change or differing interpretations (possibly with retroactive effect).

The following discussion does not address foreign, state or local tax consequences of the Plan, nor does it purport to address the United States federal

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

income tax consequences of the Plan to special classes of taxpayers (*e.g.,* banks and certain other financial institutions, insurance companies, tax-exempt organizations, governmental entities, persons that are, or hold their Claims through, pass-through entities, persons whose functional currency is not the United States dollar, foreign persons, dealers in securities or foreign currency, employees of a debtor, persons who received their Claims by exercising an employee stock option or otherwise as compensation, and persons holding Claims that are a hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale, or conversion transaction). Furthermore, the following discussion does not address United States federal taxes other than income taxes.

Holders of Claims and Equity Interests are strongly urged to consult their own tax advisor regarding the United States federal, state, local and foreign tax consequences of the transactions described in this Disclosure Statement and in the Plan.

A.    United States Federal Income Tax Consequences to the Debtor.

Under the Plan, the Debtor's outstanding indebtedness will be satisfied by payment in cash (the "Value"). The satisfaction of a debt obligation for an amount of cash less than the "adjusted issue price" of the debt obligation generally gives rise to cancellation of indebtedness ("COD") income to the debtor.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

A debtor does not, however, recognize COD income if the debt discharge occurs in a Title 11 bankruptcy case. Instead, the debtor reduces its tax attributes to the extent of its COD income in the following order: 1) net operating losses ("NOLs") and NOL carryforwards; 2) general business credit carryforwards; 3) minimum tax credit carryforwards; 4) capital loss carryforwards; 5) the tax basis of the Debtor's depreciable and nondepreciable assets (but not below the amount of their liabilities immediately after the discharge); and 6) foreign tax credit carryforwards.

A debtor may elect to alter the preceding order of attribute reduction and, instead, first reduce the tax basis of its depreciable assets. The reduction in tax attributes occurs only after the tax for the year of the debt discharge has been determined (*i.e.*, such attributes may be available to offset taxable income that accrues between the date of discharge and the end of the debtor's tax year). Because the Debtor does not hold NOLs, it is not expected that the debtor will be required to reduce their tax attributes materially.

B.    Federal Income Tax Consequences to Creditors.

The following discusses certain United States federal income tax consequences of the transactions contemplated by the Plan to Creditors that are "United States Holders," as defined below. The United States federal income tax consequences of the transactions contemplated by the Plan to Creditors (including the character,

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

timing, and amount of income, gain, or loss recognized) will depend on, among other things: 1) whether the Claim and the consideration received in respect of it are "securities" for federal income tax purposes; 2) the manner in which a Creditor acquired a Claim; 3) the length of time the Claim has been held; 4) whether the Claim was acquired at a discount; 5) whether the Creditor has taken a bad debt deduction with respect to the Claim (or any portion of it) in the current tax year or any prior tax year; 6) whether the Creditor has previously included in its taxable income accrued by unpaid interest with respect to the Claim; 7) the holder's method of tax accounting; and 8) whether the Claim is an installment obligation for federal income tax purposes. Creditors, therefore, should consult their own tax advisors regarding the particular tax consequences to them of the transactions contemplated by the Plan.

For purposes of the following discussion, a "United States holder" is a Creditor that is 1) a citizen or individual resident of the United States; 2) a partnership or corporation created or organized in the United States or under the laws of the United States, a political subdivision of the United States, or a State of the United States; 3) an estate whose income is subject to United States federal income taxation regardless of its source; or 4) a trust if (i) a court within the United States is able to exercise primary supervision over the administration of the trust and one or more United States fiduciaries have the authority to control all substantial decisions of the trust, or (ii) the

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

10-04024-FLK11    Doc 160    Filed 01/20/11    Entered 01/20/11 17:00:20    Pg 49 of 54

trust was in existence on August 20, 1996, and properly elected to be treated as a United States person.

### 1. Sale or Exchange of Claims.

Under the Plan, Creditors will receive Value in exchange for their Claims. A Creditor who receives Value or an interest in exchange for its Claim under the Plan will generally recognize gain or loss for United States federal income tax purposes in an amount equal to the difference between the Value received and the Creditor's adjusted tax basis in its Claim. The character of the gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the nature of the Claim as held by the Creditor, whether the Claim constitutes a capital asset in the hands of the Creditor, whether the Claim was purchased at a discount, whether any amount received in respect of a Claim constitutes accrued interest, and whether and to what extent the Creditor has previously claimed a bad debt deduction with respect to its Claim. A Creditor who recognizes a loss on a transaction conducted under the Plan may be entitled to a bad debt deduction, either in the taxable year of the Effective Date or a prior taxable year.

### 2. Accrued Interest.

Under the Plan, Value may be distributed or deemed distributed to certain Creditors with respect to their Claims for accrued interest. Holders of Claims for

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

accrued interest that previously have not included such accrued interest in taxable income will be required to recognize ordinary income equal to the amount of Value received with respect to such Claims for accrued interest. Holders of Claims for accured interest that have included such accrued interest in taxable income generally may take an ordinary deduction to the extent that such Claim is not fully satisfied under the Plan (after allocating the distribution between principal and accrued interest), even if the underlying Claim is held as a capital asset. The adjusted tax basis of any Value received in exchange for a Claim for accrued interest will equal the amount of Value on the Effective Date, and the holding period for the property will begin on the day after the Effective Date. It is not clear the extent to which consideration that may be distributed under the Plan will be allocable to interest. Creditors are advised to consult their own tax advisors to determine the amount, if any, of consideration received under the Plan that is allocable to interest

3. Other Claimholders.

If a Creditor reaches an agreement with the Debtor to have its Claim satisfied, settled, released, exchanged, or otherwise discharged in a manner other than as described in the Plan, that Creditor should consult with its own tax advisors regarding the tax consequences of that satisfaction, settlement, release, exchange or discharge.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

C.  Federal Income Tax Consequences to Holders of Equity Interests.

The Plan contemplates that the Equity Interests in the Debtor will be retained under the Plan.  The character of the gain or the loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including whether the equity interest constitutes a capital asset in the hands of the holder. Each equity holder should consult their own tax advisory to determine tax consequences of this Plan.

D.  Importance of Obtaining Professional Tax Assistance.

The foregoing discussion is intended only as a summary of certain United States federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional.  The above discussion is for informational purposes only and is not tax advice.  The tax consequences are in many cases uncertain and may vary depending on a Creditor's or Equity Interest holder's particular circumstances.  Accordingly, Creditors and Equity interest holders are strongly urged to consult their tax advisors about the United States federal, state and local and applicable foreign income and other tax consequences of the Plan, including with respect to tax reporting and record keeping requirements.

*IRS Circular 230 Notice*:  to comply with U.S. Treasury Regulations, be advised that any U.S. federal tax advice included in this communication (and it is not

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

10-04024-FLK11     Doc 160     Filed 01/20/11     Entered 01/20/11 17:00:20     Pg 52 of 54

intended that any such advice be given in this Disclosure Statement) is not intended or written to be used, and cannot be used, to avoid any U.S. federal tax penalties or to promote, market, or recommend to another party any transaction or matter. Claimants are advised to consult with their tax advisers respecting the individual tax consequences of the transactions contemplated by the Plan, including state and local tax consequences.

## X.  DISCLAIMER

Court approval of this Disclosure Statement and accompanying Plan, including exhibits, is not a certification of the accuracy of the contents thereof. Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## XI.  CONFIRMATION OF THE PLAN

A. Voting Procedures.

The ballot to be used for voting for the rejection or acceptance of the Plan is being mailed to the holders of Claims in Classes One through Four. The holders of impaired claims should carefully read the instructions printed on the ballot, complete, date and sign the ballot, and transmit the completed ballot to the Court and the Debtor.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

The ballot should be returned to the address indicated in Section II (B) of this Disclosure Statement.

Dated this ____ day of January, 2011.

CRUMB & MUNDING, P.S.

JOHN D. MUNDING, WSBA #21734
Attorneys for Debtor-in-Possession.

CRUMB & MUNDING, P.S.
THE DAVENPORT TOWER
111 S. POST STREET, PH 2290
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155