STOEL RIVES LLP
  David B. Levant
  Erin L. Eliasen
600 University Street, Suite 3600
Seattle, Washington 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
dblevant@stoel.com
eleliasen@stoel.com

LATHAM & WATKINS LLP
  Peter M. Gilhuly (*admitted pro hac vice*)
  Ted A. Dillman (*admitted pro hac vice*)
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
peter.gilhuly@lw.com
ted.dillman@lw.com

Attorneys for General Electric Capital
Corporation

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| CENTURION PROPERTIES III, LLC | Case No. 10-04024-FLK 11 |
|     Debtor and Debtor-in-Possession. | **OBJECTION OF GENERAL ELECTRIC CAPITAL CORPORATION TO DEBTOR'S DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

**OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................... 1

II. BACKGROUND ............................................................................ 2

    A.    GECC's Loan And Debtor's Liability ................................... 2

        1.    Loan .......................................................................... 2

        2.    Security Interest ...................................................... 2

        3.    Property ................................................................... 3

    B.    Cash Collateral Stipulations .............................................. 4

    C.    Default/Event Of Default .................................................... 4

        1.    The Debtor Failed To Repay GECC Outstanding
Principal ................................................................. 4

III. ARGUMENT ............................................................................... 5

    A.    The Disclosure Statement Must Provide Adequate
Information But Fails To Do So ........................................... 5

        1.    Legal Standard ........................................................ 5

        2.    The Disclosure Statement Fails To Provide
Adequate Information .............................................. 7

    B.    The Debtor Fails To Provide A Current Valuation Of Its
Sole Asset ........................................................................... 7

    C.    The Debtor Fails To Accurately Represent Claims
Against The Estate, And Misleads The Court And
Creditors Regarding The Possibility Of A Cram Down ..................... 8

        1.    The Debtor Fails To Disclose That GECC Holds
The Only Undisputed Claim That Is Impaired And
That It Cannot Cram Down GECC. ........................... 8

        2.    The Debtor Fails To Disclose That The Plan Seeks
To Disallow Default Interest Even Though GECC
Is Entitled To It ...................................................... 13

        3.    GECC's Lien Encumbers All Real And Personal
Property ................................................................. 14

    D.    The Liquidation Analysis Is Not Supported By Any Facts
And Does Not Meet The Requirements Of The
Bankruptcy Code ................................................................ 15

    E.    The Debtor Fails To Provide Any Facts Supporting The
Feasibility Of The Plan And The Plan Is Not Feasible ..................... 16

    F.    The Debtor Fails To Adequately Disclose The Risk
Factors Relating To Its Ability To Refinance And/Or Sell

The Property .................................................................................. 19

    1.    The Debtor Does Not Adequately Disclose The Tenant Risk .............................................................. 19

    2.    The Debtor Does Not Adequately Disclose The Market Risk ............................................................ 20

    3.    The Debtor Is Likely To Face A Subsequent Liquidation .............................................................. 21

G.    The Infeasibility Of The Plan And Anticipated Liquidation Make It Unconfirmable .............................. 21

H.    Disapproval Of The Disclosure Statement Will Preserve The Estate ................................................... 22

IV. CONCLUSION ........................................................................ 23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetna Realty Inv., Inc. v. Monarch Beach Venture, Ltd. (In re Monarch Beach Venture, Ltd.)*,
166 B.R. 428 (C.D. Cal. 1993) ........................................................................ 8

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*,
280 F.3d 648 (6th Cir), cert. denied, 537 U.S. 816, 123 S. Ct. 85, 154 L. Ed. 2d 21 (2002) ........................................................................... 9

*Farm Credit Bank of Spokane v. Tucker*,
62 Wn. App. 196, 813 P.2d 619 (1991) ...................................................... 14

*GE Capital Corp. v. Future Media Prods.*,
536 F.3d 969 (9th Cir. Cal. 2008) ............................................................... 14

*Hepner v. PWP Golden Eagle Tree, LLC (In re K& J Props.)*,
338 B.R. 450 (Bankr. D. Colo. 2005) ......................................................... 12

*In re Bjolmes Realty Trust*,
134 B.R. 1000 (Bankr. D. Mass. 1991) ....................................................... 19

*In re Cardinal Congregate I*,
121 B.R. 760 (Bankr. S.D. Ohio 1990) .......................................... 16, 19, 22

*In re Civitella*,
15 B.R. 206 (Bankr. E.D. Pa. 1981) .............................................................. 6

*In re Consul Restaurant Corp.*,
146 B.R. 979 (Bankr. D. Minn. 1992) ........................................................... 9

*In re Dakota Rail, Inc.*,
104 B.R. 138 (Bankr. D. Minn. 1989) ................................................. 5, 6, 7

*In re Diberto*,
164 B.R. 1 (Bankr. D. N.H. 1993) ............................................................... 19

*In re Dow Corning Corp.*,
244 B.R. 705 (Bankr. E.D. Mich. 1999), aff'd in relevant part, 255 B.R. 445 (E.D. Mich. 2000) ....................................................................... 9

*In re Eastern Maine Electric Cooperative, Inc.*,
125 B.R. 329 (Bankr. D. Me. 1991) ............................................................ 21

*In re Egan*,
33 B.R. 672 (Bankr. N.D. Ill. 1983) ............................................................ 17

LATHAM&WATKINS LLP LA\2226736.1
ATTORNEYS AT LAW
LOS ANGELES

**OBJECTION OF GECC TO DEBTOR'S DISCLOSURE STATEMENT**

*In re Market Square Inn, Inc.*,
    163 B.R. 64 (Bankr. W.D. Pa. 1994)..................................................................22

*In re Monroe Well Service, Inc.*,
    80 B.R. 324 (Bankr. E.D. Pa. 1987).........................................................5, 6, 22

*In re Northwest Recreational Activities, Inc.*,
    8 B.R. 10 (Bankr. N.D. Ga. 1980).....................................................................6

*In re Oxford Homes, Inc.*,
    204 B.R. 264 (Bankr. D. Me. 1997).....................................................................6

*In re Pecht*,
    53 B.R. 768 (Bankr. E.D. Va. 1985)..................................................................22

*In re Pecht*,
    57 B.R. 137 (Bankr. E.D. Va. 1986)..................................................................22

*In re Scioto Valley Mortgage Co.*,
    88 B.R. 168 (Bankr. S.D. Ohio 1988)..................................................................7

*In re The Prudential Energy Company*,
    59 B.R. 765 (Bankr. S.D.N.Y. 1986)...........................................................6, 16

*In re U.S. Brass Corp.*,
    194 B.R. 420 (Bankr. E.D. Tex. 1996)..........................................................5, 6

*Intercommunity-Mercy Wash. II Ltd. P'ship. v. Wallace*,
    1996 Wash. App. LEXIS 372 (Wash. Ct. App. 1996)......................................14

*Krutz v. Robbins*,
    12 Wash. 7, 40 P. 415 (1895)...........................................................................14

*Sloane v. Lucas*,
    37 Wash. 348, 79 P. 949 (1905).......................................................................14

**STATUTES**

11 U.S.C. § 1124(2)(B) ...........................................................................................12

11 U.S.C. § 1125 .....................................................................................................19

11 U.S.C. § 1125(a) ..................................................................................................5

11 U.S.C. § 1125(b) ..................................................................................................5

11 U.S.C. § 1129 .....................................................................................................15

11 U.S.C. § 1129(a) ............................................................................................16, 21

11 U.S.C. § 1129(a)(11) ...........................................................................................21

10-04024-FLK11    Doc 181    Filed 03/02/11    Entered 03/02/11 09:27:05    Pg 5 of 29

11 U.S.C. § 1129(a)(7) ............................................................... 15, 16

11 U.S.C. § 1129(b) ..................................................................... 8, 9

11 U.S.C. § 1129(b)(1) ..................................................................... 8

11 U.S.C. § 1129(b)(2)(A) ............................................................... 12

## OTHER AUTHORITIES

H.R. Rep. No. 595, 1st Sess. 414 (1977).............................................. 12

## RULES

Local Bankruptcy Rule 3017-1...................................................... 6, 7

## TREATISES

Collier on Bankruptcy P 1125.02[2] (Alan N. Resnick & Henry J.
     Sommer eds., 16th ed.)............................................................ 7

Collier on Bankruptcy P 1129.03 (Alan N. Resnick & Henry J. Sommer
     eds., 16th ed.)..................................................................... 9

Glen W. Merrick, The Chapter 11 Disclosure Statement in a Strategic
     Environment, 44 The Business Lawyer 103 (November 1988)....................... 7

10-04024-FLK11    Doc 181    Filed 03/02/11    Entered 03/02/11 09:27:05    Pg 6 of 29

General Electric Capital Corporation ("**GECC**") hereby objects (this "**Objection**") to the approval of the Disclosure Statement Describing Debtor's Chapter 11 Plan of Reorganization, entered on January 20, 2011 [Docket No. 160] (the "**Disclosure Statement**") filed by the above captioned debtor and debtor-in-possession (the "**Debtor**") and the Debtor's accompanying Chapter 11 Plan of Reorganization [Docket No. 161] (the "**Plan**").

## I. <u>INTRODUCTION</u>

The Debtor fails to disclose that it does not propose a plan of reorganization. Rather, it is a "plan" to have a plan in three years. Moreover, the Debtor fails to disclose that, in all probability, it will *not* be able to effectuate the refinancing that is the cornerstone of the Plan.

In effect, the Debtor seeks a three-year extension of GECC's fully matured Loan to enable the Debtor to litigate disputed claims and to seek financing to repay GECC. During this three-year period, the Debtor proposes to pay GECC the non-default contract rate of interest of 6.36%, even though the Loan is fully matured, was in default pre-petition, and GECC is contractually and legally entitled to payment of interest at the 11.36% default rate. Moreover, the Disclosure Statement fails to provide facts that support the feasibility of the Plan (which is not in fact feasible), and fails to disclose that the Plan impermissibly shifts risks to GECC and will most likely be followed by a liquidation.

The Plan improperly seeks to shift all of the risk onto GECC, the first priority secured creditor, while the Debtor prays for the recovery of the real estate and credit markets, all the while proposing to pay unsecured creditors ahead of GECC and making believe that it can cram down GECC at a reinstatement rate of interest. It fails to provide a current valuation of the Debtor's sole asset (which GECC believes the Debtor has grossly overstated), and fails to support the feasibility of its Plan or its liquidation analysis with any evidence whatsoever. It purports to seek to "cram down" the Plan if at least one class of non-insider

impaired claims votes to approve the Plan, but fails to disclose that GECC holds the only non-insider, impaired claim, and therefore holds the only claim entitled to vote under the terms of the Plan. GECC will not accept the proposed treatment of its Claim, and the Debtor fails to disclose that this renders the Plan infeasible and therefore unconfirmable.

This Plan is fatally defective and flawed. Allowing it to move forward would waste both the Court's and the Debtor's time and resources. GECC has afforded the Debtor every opportunity and consistently worked with the Debtor to make progress in this case (including terminating its control over the Debtor's cash and consenting to the use of cash collateral to hire an expert to assist the Debtor in obtaining financing). However, this is a single asset real estate case and GECC should not be held hostage forever. Unless the Debtor can propose a credible, confirmable plan of reorganization that can be consummated within a reasonable period of time (e.g., six months, not three years), the case should either be converted to a chapter 7 or GECC should be granted relief from stay, thereby allowing all parties in interest to recover their collateral and protect their interests under applicable state law.

## II. BACKGROUND

### A. GECC's Loan And Debtor's Liability.

#### 1. Loan.

On or about November 28, 2006, GECC and the Debtor entered into a Loan Agreement (the "**Loan Agreement**," and the loan made pursuant thereto, the "**Loan**") in the original principal amount of $70,866,000. (Loan Agreement, § 2.1). A true and correct copy of the Loan Agreement is attached as Exhibit A to the Declaration of Sebastian Perin ("**Perin Decl.**") filed in support hereof. The Loan matured by its terms on November 30, 2009. (Loan Agreement, § 1.01).

#### 2. Security Interest.

It is undisputed that GECC "holds a valid, perfected, enforceable, and

10-04024-FLK11    Doc 181    Filed 03/02/11    Entered 03/02/11 09:27:05    Pg 8 of 29

unavoidable first priority lien upon and security interest in substantially all of the Debtor's assets, including real and personal property and cash collateral, which secure Debtor's prepetition obligations to GECC." (*See* Memorandum in Support of Debtor's Motion for Order Extending Exclusivity [Docket No. 87] (the "**Exclusivity Motion**"), p. 6; Amended Cash Collateral Order, p. 11). The prepetition outstanding principal balance of GECC's lien was not less than $58,258,354.28, plus other amounts owing under the loan documents, including interest, fees, and expenses. On November 23, 2010, GECC timely filed its Proof of Claim in the above-captioned proceedings in the amount of $59,190,636.94 plus other amounts set forth therein (the "**Claim**").

3.    **Property.**

The "**Battelle Property**" is a campus style property located in Richland Washington. The Debtor's key asset consists of its leasehold interest in the Battelle Property (the "**Battelle Leaseholds**"). Specifically, the Debtor leases the underlying land from Battelle Memorial Institute ("**Battelle**"), under certain ground leases, expiring between 2051 and 2060 (the "**Ground Leases**"). The Debtor owns the five buildings, related improvements and common areas located on the Battelle Property, and leases these facilities back to Battelle under shorter term Facilities Leases, expiring between 2017 and 2018 (the "**Facilities Leases**"). Pursuant to the terms of the Facilities Leases, Battelle pays the Debtor significantly more than the Debtor pays to Battelle pursuant to the terms of the Ground Leases. The Battelle Leases constitute substantially all of the Debtor's assets. The Debtor's interest in the Ground Leases, the Facilities Leases, and the facilities themselves secure repayment of the Loan. Managing and operating the Battelle Property represents substantially all of the Debtor's business and generates substantially all of the Debtor's gross income. (Perin Decl. ¶ 11).

The Debtor has represented that the value of its interest in the Battelle Property is approximately $98 million. (Disclosure Statement, VI.J, p. 39). This

10-04024-FLK11    Doc 181    Filed 03/02/11    Entered 03/02/11 09:27:05    Pg 9 of 29

valuation is based on an appraisal from June 8, 2008, which substantially pre-dates the "meltdown" of the real estate markets. GECC is in the process of obtaining a current appraisal, but believes that the value represented by the Debtor is likely significantly overstated.

## B. Cash Collateral Stipulations.

Substantially at the outset of the case, GECC and the Debtor stipulated to the use of GECC's cash collateral, which was approved by the Court pursuant to that certain Stipulated Order Authorizing Final Use of Cash Collateral [Docket No. 76], entered on September 17, 2010 (the "**First Cash Collateral Order**"). On December 30, 2010, the Court entered that certain Stipulated Amended and Restated Order Authorizing Final Use of Cash Collateral [Docket No. 147] (the "**Amended Cash Collateral Order**" and together with the First Cash Collateral Order, the "**Cash Collateral Orders**").

Prior to the Cash Collateral Orders, all revenues from the Battelle Property were deposited into a lockbox, which was controlled by GECC. Through the Cash Collateral Orders, GECC consensually agreed to terminate the lockbox and allow all of the revenue to be paid into a Money Market Account (the "**Money Market Account**") controlled by the Debtor, subject to the Cash Collateral Orders. GECC was granted a first priority perfected security interest in and lien upon the Money Market Account, all of the Debtor's rights in the funds therein, and any interest earned thereon. (Amended Cash Collateral Order, pp. 7-8).

## C. Default/Event Of Default.

### 1. The Debtor Failed To Repay GECC Outstanding Principal.

The Loan matured on November 30, 2009 (the "**Maturity Date**") and the Debtor failed to repay the amounts due. This constituted an Event of Default under the Loan Agreement, during the existence of which the Loan bears interest at the "**Default Rate**" of an additional 5% over the 6.36% rate that applies when no Event of Default exists. (Loan Agreement, § 2.2). The Event of Default has not

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

4

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

been cured by the Debtor as of the date hereof. (Perin Decl. ¶ 16).

Also, pursuant to the Cash Collateral Orders, GECC and the Debtor agreed, and the Court ordered, that the Debtor would pay GECC $330,000 per month (representing payment of interest at 6.36%) and would accrue default interest at an additional 5%. (Cash Collateral Order, p. 9). Although the Debtor reserved the right to modify the terms of the Loan, including the Default Rate, through a plan of reorganization, the Debtor has no such right and fails to assert any basis which would allow the Debtor to modify GECC's clear legal entitlement to default interest and costs. (*Id.*).

## III. ARGUMENT

A.  **The Disclosure Statement Must Provide Adequate Information But Fails To Do So.**

1.  **Legal Standard.**

The disclosure statement must provide creditors with adequate information that enables them to determine whether to accept or reject a proposed plan of reorganization. The purpose of the disclosure statement is not to assure the acceptance or rejection of a plan, but rather to provide *facts* upon which interested parties can make an informed decision. *See In Re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989); *In Re Monroe Well Service, Inc.*, 80 B.R. 324, 330 (Bankr. E.D. Pa. 1987); *In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996).

Section 1125(b) of Title 11, United States Code (the "**Bankruptcy Code**") precludes this Court from approving the Disclosure Statement unless it contains "adequate information." "Adequate information" is defined as:

> information of a kind, and in sufficient detail...that would enable a hypothetical investor [typical of holders of claims or interests] of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a).

10-04024-FLK11   Doc 181   Filed 03/02/11   Entered 03/02/11 09:27:05   Pg 11 of 29

"[T]he concept of adequate information under §1125 of the Code does not contemplate revelation by inference. Creditors are not required or expected to rely on inferences. Disclosure of material facts is what is required." *See, e.g.*, *In re The Prudential Energy Company*, 59 B.R. 765, 768 (Bankr. S.D.N.Y. 1986). Thus, "adequate information" plainly requires that a disclosure statement include all *facts* that might be material to a creditor's evaluation of the proposed plan of reorganization. The disclosure is inadequate if it is based on inferences or the debtor's conclusions. (*Id.*)

For a disclosure statement to provide adequate information, it must also contain sufficient financial information, so that a creditor (a hypothetical investor) can make an informed judgment as to whether to accept or reject the proposed plan of reorganization. *See In Re Monroe Well Service, Inc.*, 80 B.R. at 330; *In Re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981); *In Re Northwest Recreational Activities, Inc.*, 8 B.R. 10 (Bankr. N.D. Ga. 1980).

Courts generally require and Local Bankruptcy Rule 3017-1 mandates that every disclosure statement provide *at least*:

    (a)    a complete description of the available assets and their values;

    (b)    information regarding claims against the estate;

    (c)    a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

    (d)    any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

    (e)    information relevant to the risks being taken by the creditors and interest holders; and

    (f)    a statement as to how the plan is to be executed.

*See In Re Dakota Rail, Inc.*, 104 B.R. at 142-143; *In Re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Me. 1997); *In Re U.S. Brass Corp.*, 194 B.R. at 424-425;

10-04024-FLK11   Doc 181   Filed 03/02/11   Entered 03/02/11 09:27:05   Pg 12 of 29

*In re Scioto Valley Mortgage Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988); *see also* Collier on Bankruptcy P 1125.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); Glen W. Merrick, The Chapter 11 Disclosure Statement in a Strategic Environment, 44 The Business Lawyer 103, 113-116 (November 1988).

### 2. **The Disclosure Statement Fails To Provide Adequate Information.**

The Debtor's Disclosure Statement fails to provide adequate information and does not meet the requirements of Local Bankruptcy Rule 3017-1 because: (i) it does not provide the current valuation of the Debtor's sole asset, (ii) it fails to accurately represent the claims against the estate, (iii) it fails to disclose that a cram down is improper and infeasible, (iv) the Debtor's liquidation analysis is not supported by facts, does not disclose the expected recoveries of each class of creditors in a chapter 7 liquidation, and does not meet the other requirements of the Bankruptcy Code, and (v) it provides *no* facts supporting the Plan's feasibility, among other things. As a result, the Disclosure Statement does not provide adequate information to allow GECC and other creditors to make an informed judgment as to whether the Debtor can effectuate the Plan (which it probably cannot), and whether the creditors should accept the Plan (which GECC will not). Accordingly, the Disclosure Statement may not be approved.

### B. <u>The Debtor Fails To Provide A Current Valuation Of Its Sole Asset.</u>

The Debtor must provide a complete description of the available assets and their values, and otherwise provide current financial information. *See e.g.* Local Bankruptcy Rule 3017-1; *In Re Dakota Rail, Inc.*, 104 B.R. at 142-143. The Debtor only has one asset – the Battelle Leaseholds and the improvements located thereon. The Debtor claims that this asset has been "valued in excess of $90 million," and that the estimated fair market value of the Debtor's interest in Battelle Property is $98 million, based on an appraisal dated June 9, 2008. (*See*

LATHAM&WATKINS LLP  LA\2226736.1
ATTORNEYS AT LAW
LOS ANGELES

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

Disclosure Statement, V.B, p. 25 and VI.J, 39).

The Debtor fails to disclose that real estate and credit markets have changed dramatically since June 2008, that real estate prices are generally far lower today than in 2008, and that, despite the Debtor's claim that "every effort has been made to provide the most accurate information available," the Debtor has not even attempted to obtain an updated appraisal for its only asset. (Disclosure Statement, III.C, p. 9). GECC is in the process of obtaining an appraisal of the Battelle Leaseholds, but believes that the asset's value has likely declined dramatically since 2008. (*See* Perin Decl. ¶ 10).

The Debtor must disclose facts to support its Plan, its assets and their values and provide current financial information. The Debtor's inability to put forth any evidence regarding the current value of its single asset renders the "disclosure" contained in the Disclosure Statement illusory. This results in the lack of adequate information and, therefore, the Disclosure Statement may not be approved.

### C. The Debtor Fails To Accurately Represent Claims Against The Estate, And Misleads The Court And Creditors Regarding The Possibility Of A Cram Down.

#### 1. The Debtor Fails To Disclose That GECC Holds The Only Undisputed Claim That Is Impaired And That It Cannot Cram Down GECC.

##### (a) A Cram Down Would Not Be Fair And Equitable.

A cram down is only permissible if it is fair and equitable, and does not discriminate unfairly. 11 U.S.C. § 1129(b)(1). "When the proposed distribution would substantially shift the risk of failure of the plan from a junior class to a senior dissenting class for no legitimate purpose, the plan is not fair and equitable to the dissenting class," thus rendering cram down under Section 1129(b) of the Bankruptcy Code improper. *Aetna Realty Inv., Inc. v. Monarch Beach Venture, Ltd. (In re Monarch Beach Venture, Ltd.)*, 166 B.R. 428, 436 (C.D. Cal. 1993)

(quoting *In re Consul Restaurant Corp.*, 146 B.R. 979, 989 (Bankr. D. Minn. 1992)); *see also In re Dow Corning Corp.*, 244 B.R. 705, 710-11 (Bankr. E.D. Mich. 1999), aff'd in relevant part, 255 B.R. 445 (E.D. Mich. 2000), aff'd in part and remanded, *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir), cert. denied, 537 U.S. 816, 123 S. Ct. 85, 154 L. Ed. 2d 21 (2002). Section 1129(b)'s requirements are "are both numerous and exacting," and place the burden of proof "squarely" on the proponent of the plan. *See* Collier on Bankruptcy P 1129.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). This requirement is not satisfied by the Plan.

GECC is the only creditor with a significant, undisputed claim that is impaired under the Plan. For instance, while the secured claim of the Benton County Treasurer and general unsecured claims (held both by insiders and third parties) are classified as "impaired," the Plan provides that they are to be paid in full, with interest, within 60 or 90 days of the Effective Date. Moreover, the Debtor asserts that the County Treasurer's claim has been paid, and the Cash Collateral Orders have provided for current payment of taxes related to the Battelle Property. (Perin Decl. ¶ 15; Disclosure Statement VI.B.2.b, p. 30). Further, these creditors are owed *de minimis* amounts compared to GECC's Claim, and the Debtor has sufficient liquidity to pay them on the Effective Date in full, rendering them unimpaired. In contrast, under the Plan, GECC's undisputed, first priority, secured claim will not be repaid until 3 years after the Effective Date (or, more likely, not at all).

The proposed cram down of GECC has the effect of shifting all risk to the senior, secured creditor, while providing practically immediate payment in full to other creditors, including unsecured creditors and insiders, from GECC's collateral. Such a result is patently inappropriate and constitutes unfair discrimination against GECC.

///

10-04024-FLK11   Doc 181   Filed 03/02/11   Entered 03/02/11 09:27:05   Pg 15 of 29

(b) <u>A Cram Down Is Not Feasible Because GECC Is The Only Impaired Creditor Entitled To Vote</u>.

The Disclosure Statement provides that the Debtor will seek to confirm the Plan under the cram down provisions of 1129(b), "assuming that at least one Impaired Class votes to accept the Plan." (Disclosure Statement, III.B.4, p. 7). However, the Debtor fails to disclose that GECC's Claim represents the only truly impaired, non-insider class that will be entitled to vote, that GECC will not accept the treatment proposed for its Claim, and that a cram down is therefore not possible.

Under Section 1129(a)(10) of the Bankruptcy Code, the votes of insider claims and unimpaired claims are not entitled to vote, and are irrelevant in determining whether the Plan can be crammed down. Moreover, the Disclosure Statement provides that the holders of disputed claims are not entitled to vote on the Plan. (*See* Disclosure Statement, III.B.1, pp. 4-5). Therefore, in order for the Plan to be crammed down, at least one class of undisputed, impaired, non-insider claims must vote to accept it.

A review of the classes of claims set forth on Exhibit B of the Disclosure Statement reveals that GECC is the only creditor whose claim is impaired in any real sense, undisputed, and not held by an insider. Thus, the vote of GECC's Claim is the only vote relevant for cram down. The other claims are held by insiders, disputed, or are not in fact impaired in any meaningful way.

The claims of Centurion Pacific, LLC and Centurion Southwest LLC (Class 9) and Sigma Management, Inc. (Class 11) are insider claims, and therefore their votes are excluded when determining whether an impaired class has accepted the Plan. (*See* Disclosure Statement, VI.B.2.f and h, pp. 32-33; Plan, II.B.2.f and h, pp. 13-14). The claims of Centrum Financial Services, Inc. (Class 7) and Equity Funding, LLC (Class 8) are disputed and will not be allowed to vote. (*See* Disclosure Statement, III.B.1, pp. 4-5).

Lastly, the claims of the Benton County Treasurer (Class 5) and the general, non-insider unsecured claims (Class 10) (which represent the only non-insider, undisputed claims) are not in fact impaired in any real sense. Regarding the former, payment is authorized under the Cash Collateral Order and the Debtor has represented that it believes that the claim has been paid. (*See* Disclosure Statement, VI.B.2.b, p. 30). To the extent not paid, the Plan provides for payment of the claim in full, with interest, within 60 days of the Effective Date. Such payment could be funded entirely as of the Effective Date in light of the Debtor's approximately $2.96 million accumulated cash balance. (Perin Decl. ¶ 14). Moreover, there are only $3,313 of unsecured claims held by non-insiders, which, under the Plan, will be paid in full, with interest, within 90 days of the Effective Date. Again, there is no reason that these *de minimis* claims cannot be paid as of the Effective Date, considering the Debtor's considerable accumulated cash balance, and, even if they are not, these claims are effectively unimpaired. (*Id*.) The same is the case for insider unsecured claims.

The Debtor therefore fails to accurately characterize and adequately disclose the classes of claims entitled to vote on the Plan. Once disclosed, the cram down provisions of the Plan are unworkable, and the Plan is therefore infeasible. GECC holds the only undisputed claim that is impaired in any true sense, and is therefore the only creditor entitled to vote on the Plan under its terms. The other creditors in this case are insiders, hold disputed claims, have already been paid, or are not impaired in any meaningful sense (and therefore cannot vote). GECC will not accept the Plan's proposed treatment of its Claim and, therefore, the Debtor cannot cram down GECC because no impaired class entitled to vote is likely to accept the Plan. The Debtor's failure to disclose this obvious risk to the Plan's confirmability renders the Disclosure Statement inadequate.

///

///

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

11

**OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT**

(c)     **The Debtor Has Not Disclosed Facts That Would**
        **Support Its Ability To Cram Down GECC, Which Is Not**
        **Feasible**.

Under Section 1129(b)(2)(A) of the Bankruptcy Code, in order to impose a cram down, GECC must receive "deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." Congress was clear that the requirement that a creditor or interest holder receive property "of a value, as of the effective date of the plan" meant that Courts were to calculate the "present value" of the property. *See* H.R. Rep. No. 595, 1st Sess. 414 (1977) ("This contemplates a present value analysis that will discount value to be received in the future").

In its Disclosure Statement, the Debtor states that GECC's Claim "shall accrue interest at the rate of six and thirty-sixths (6.36%) per annum on account of its Allowed Claim…and at the end of 36 months GECC shall be paid in full any unpaid amount, if any, of its Allowed Claim." (Disclosure Statement, VI.B.2.a, p. 29; Plan, II.B.2.a, p. 11). In seeking to pay GECC an interest rate of only 6.36%, it appears that the Debtor is attempting to reinstate GECC's fully matured Loan. This is prohibited. Under Section 1124(2)(B) of the Bankruptcy Code, the Debtor may only reinstate a loan if (a) it has not matured, and (b) all defaults are cured. In this case, the Loan matured on November 30, 2009. Therefore, the Debtor cannot reinstate the Loan. *See Hepner v. PWP Golden Eagle Tree, LLC (In re K & J Props.)*, 338 B.R. 450, 461 (Bankr. D. Colo. 2005) ("[N]o reorganization plan of these Debtors could cure these loans and reinstate the original maturity, as the maturity date of these loans predated the filing of these Debtors' bankruptcies").

The Debtor fails to disclose that the proposed rate of 6.36% rate is a grossly inadequate cram down interest rate, and could only be achieved if reinstatement

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

12

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

were possible (which it is not here).  The Debtor has also failed to provide any data that would support the use of the 6.36% interest rate in a cram down scenario.  In fact, an appropriate cram down rate would be *dramatically* higher, likely between 13% and 15%.  (*See* Declaration of David Rifkind ("**Rifkind Decl.**"), ¶ 8).

Moreover, after paying the higher interest rate, the Debtor's cash flow will be insufficient to fund the Plan.  For instance, making interest only payments on GECC's Claim at these rates would require monthly payments to GECC of between approximately $641,000 and $740,000.  The Debtor's monthly cash flow is approximately $556,000.  (*See* Disclosure Statement, IV.C, p. 14).  After making payments at either rate, the Debtor would be insolvent on a cash flow basis as of the Effective Date.

In addition, because the Debtor has failed to disclose any facts that show it could cram down GECC at an interest rate of 6.36% or that it will be able to fund its Plan after an appropriate interest rate is paid.  Accordingly, the Disclosure Statement does not provide adequate information, and may not be approved.

### 2. The Debtor Fails To Disclose That The Plan Seeks To Disallow Default Interest Even Though GECC Is Entitled To It.

Article XII of the Plan provides that the Debtor will not make any distributions "on account of any late charges, default interest and other charges arising from any default or breach by the Debtor."  (Plan, XII, p. 25).  However, there is no mention of this in the Disclosure Statement.

GECC timely filed a proof of claim asserting its right to default interest which accumulates at approximately $2.9 million per year.  The Debtor stipulated that default interest would accrue on the Loan in the Cash Collateral Orders.  (*See* Amended Cash Collateral Order, p. 9).  Although the Debtor reserved any right it may have had to modify the Loan, including the default interest provisions, through a plan of reorganization, the Debtor failed to disclose that it has no such

right and that GECC is entitled to default interest and other charges under Ninth Circuit law.

The Ninth Circuit has stated that the rule is "to apply a presumption of allowability for the contracted default rate, provided that the rate is not unenforceable under applicable nonbankruptcy law." *GE Capital Corp. v. Future Media Prods.*, 536 F.3d 969, 974 (9th Cir. 2008) (internal quotations omitted). Under Washington law, Courts will apply a default rate of interest so long as it is not usurious and does not constitute a penalty. *See Sloane v. Lucas*, 37 Wash. 348, 79 P. 949 (1905); *Farm Credit Bank of Spokane v. Tucker*, 62 Wn. App. 196, 813 P.2d 619 (1991). The cases in which a Washington Court held the default rate to constitute a penalty involved provisions that retroactively applied a higher interest rate (effectively treating the loan as in default from the time it was made). *See, e.g.*, *Krutz v. Robbins*, 12 Wash. 7, 40 P. 415 (1895); *Intercommunity-Mercy Wash. II Ltd. P'ship. v. Wallace*, 1996 Wash. App. LEXIS 372 (Wash. Ct. App. 1996). Here, the Default Rate provisions do not have retroactive application and, as such, are effective. (*See* Loan Agreement, § 2.2).

In spite of this, the Debtor fails to disclose, in either the Plan or Disclosure Statement, that GECC is contractually and legally entitled to all such charges, and that the Debtor has no legal basis to escape these claims. Article XII of the Plan also states that a creditor must file a motion for the allowance of such claims, which is inconsistent with the claims process. (Plan, XII, p. 25). Although the Debtor reserved any right it may have had to modify the Loan, this does not authorize the Debtor to require GECC to prove its entitlement to these amounts when the Debtor has not raised any argument as to why they should not be allowed, particularly if, as the Debtor contends, GECC is oversecured.

### 3. **GECC's Lien Encumbers All Real And Personal Property.**

In addition to failing to provide a current market value for its real estate assets, the Debtor fails to disclose that all of its interest in real estate assets is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES
LA\2226736.1

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

encumbered by GECC's lien. Although Section V.B.2 of the Disclosure Statement explicitly states that all of the Debtor's personal property is encumbered by GECC's lien, it fails to disclose that all real estate assets are similarly encumbered. Moreover, the Debtor apparently continues to reserve the right to dispute claims, and requires secured creditors to seek a determination of secured status (presumably including GECC), even though GECC believes its lien to be undisputed and the Debtor waived its right to dispute this lien under the terms of the Amended Cash Collateral Order. (*Cf.* Amended Cash Collateral Order pp. 2-3, 11; Plan, IX, p. 22).

**D.**     **The Liquidation Analysis Is Not Supported By Any Facts And Does Not Meet The Requirements Of The Bankruptcy Code.**

Section 1129(a)(7) of the Bankruptcy Code requires a liquidation analysis showing that every holder of a claim, in each class, will receive or retain under the plan at least as much as such creditor would receive in a chapter 7 liquidation. The liquidation analysis must be based upon *facts* and provide an analysis of *each* class of impaired claims.

In the Disclosure Statement, the Debtor estimates the "fair market value" of the Battelle Leaseholds to be approximately $98 million and asserts that the liquidation value would "presumably" be less than $98 million. (Disclosure Statement, VI.J, p. 39). However, as noted above, the Debtor does not provide any credible support for its $98 million valuation, nor does it provide any evidence or analysis of the liquidation value of its assets. Despite the absence of any support, the Debtor then concludes that its liquidation analysis satisfies the requirements of Section 1129, which is utterly inaccurate.

As stated above, the Bankruptcy Code definition of "adequate information," requires that a disclosure statement include *facts* that may be material to a creditor's evaluation of the proposed plan, as opposed to mere inferences or the debtor's conclusions. *See, e.g.*, *In re The Prudential Energy Company*, 59 B.R.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

15

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

10-04024-FLK11    Doc 181    Filed 03/02/11    Entered 03/02/11 09:27:05    Pg 21 of 29

765, 768 (Bankr. S.D.N.Y. 1986) ("Creditors are not required or expected to rely on inferences. Disclosure of material facts is what is required"). The Debtor provides no facts that would support the assertions made in its liquidation analysis and, therefore, the Disclosure Statement fails to provide adequate information.

Moreover, Section 1129(a)(7) requires that *each* class of claims receive at least as much as it would in a chapter 7 liquidation. The Debtor's liquidation analysis lumps all classes of claims together. Under the Plan, unsecured creditors and other lienholders will be paid in full, with interest, within 60 to 90 days of the Effective Date (and could easily be paid on the Effective Date). In contrast, GECC will not be repaid until three years after these other creditors, including unsecured creditors, are fully paid (from GECC's collateral). The Debtor has failed to show that GECC will receive as much under the Plan as if the Debtor's interest in the Battelle Property was liquidated and creditors were paid immediately in order of priority (in which case, GECC would essentially be first in line). Thus, the Debtor has not satisfied the requirements of Section 1129(a)(7), and the Disclosure Statement cannot be approved.

**E.** **The Debtor Fails To Provide Any Facts Supporting The Feasibility Of The Plan And The Plan Is Not Feasible.**

A plan of reorganization cannot be confirmed unless it is feasible. 11 U.S.C. § 1129(a). The disclosure statement must include a *bona fide* explanation regarding the plan's execution, so that creditors can appreciate "all material information relating to the risks posed to creditors… under the proposed plan." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). In this case, the Debtor fails to set forth adequate information regarding the Plan's feasibility.

A central component of the Debtor's "plan" involves refinancing the Allowed Secured Claims (which principally, if not exclusively, consist of GECC's Claim), when (*if*) it is able to obtain "conventional" financing or "bond" financing.

LATHAM&WATKINS LLP LA\2226736.1
ATTORNEYS AT LAW
LOS ANGELES

10-04024-FLK11    Doc 181    Filed 03/02/11    Entered 03/02/11 09:27:05    Pg 22 of 29

(*See* Disclosure Statement, VI.F.1, p. 35; Plan, II.A, p. 9 and VI.A, p. 20). After refinancing, the Debtor claims that it will pay all Allowed Claims in full within thirty-six (36) months. (*See* Disclosure Statement, VI.A, p. 28; Plan, II.B.2.a, p. 11).

Based on the Debtor's testimony at the Section 341 meeting, GECC believes that the Debtor has been attempting to secure financing since at least August 2010. In order to grant the Debtor every opportunity to obtain financing, GECC agreed to the use of its cash collateral to pay a "specialist" employed by the Debtor to assist its "quest" for financing, and this "specialist" commenced his work in early January if not before. However, despite these efforts, no concrete progress or clear plan of refinancing is discussed in the Disclosure Statement. Although the Debtor references the "financial information" provided in the Disclosure Statement, it does not provide any evidence, aside from its own "belief," that it will be able to refinance the Allowed Secured Claims. (Disclosure Statement, VI.H, p. 37).

Such statements regarding the Debtor's "belief" do not provide creditors any meaningful factual information. This "disclosure" is therefore illusory. As one Court stated:

> statements of opinion or belief without factual support do not belong in a disclosure statement....The purpose of disclosure is to present the parties voting on the plan with sufficient factual information to independently evaluate the merits of the proponent's plan. It is clear that one cannot arrive at an informed decision based on a proponent's self-serving opinion.

*In re Egan*, 33 B.R. 672, 675 (Bankr. N.D. Ill. 1983).

In addition, the Debtor does not provide facts regarding its ability to refinance, and fails to describe the likelihood that it will not be able to refinance at a rate that the cash flow from the Battelle Leaseholds will sustain.

In order to obtain sufficient financing to repay GECC's Claim, in light of the risks associated with the Battelle Leaseholds, the Facilities Leases would need to generate dramatically greater revenue and/or have significantly longer terms. (*See*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES
LA\2226736.1

*generally* Rifkind Decl.). The risks related to the Battelle Leaseholds include Battelle's right to terminate the Facilities Leases between 2017 and 2018 and the fact that Battelle is paying above-market rent. This risk is compounded by the difficulty the Debtor would have re-tenanting the Battelle Property. Further, a potentially unappealing loan-to-value ratio, the lack of a tenant with an investment grade credit rating, and the unavailability of a personal guaranty backed by significant financial resources will also contribute to a high interest rate, decrease the amount of debt proceeds the Debtor may be able to obtain, and/or limit the Debtor's ability to obtain financing at all.[1] (*See* Rifkind Decl., ¶ 23). Moreover, the market for lending based on *leasehold* interests is different than the fee simple lending market, and may render financing unobtainable in light of these project specific risks. (*See Id.* at ¶ 24).

The Disclosure Statement claims that the Debtor intends to pursue "bond financing." (Disclosure Statement VI.F.1, p. 35). However, the "market for bond financing for non-investment grade, short duration leases does not exist at the present time." (Rifkind Decl. ¶ 24). Moreover, in terms of either "bond financing" or "conventional financing," while significant sources of capital are available to provide real estate financing, current "underwriting requirements are strict and conservative." (*Id.* at ¶ 13). Because Battelle is not an investment grade entity and due to the short duration of the Facilities Leases, a new lender will require a guaranty of any new debt from an individual with significant financial resources. (*Id.* at ¶ 23). Generally, the "rule of thumb" for a satisfactory guaranty requires the guarantor have "a net worth, outside of the subject asset, equal to or in excess of

---

[1] Although the Debtor estimates the fair market value of the Battelle Property to be approximately $98 million, this June 2008 appraisal likely significantly overstates the value of the Battelle Property. (*See* Disclosure Statement, VI.J, p. 39).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

18

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

10-04024-FLK11   Doc 181   Filed 03/02/11   Entered 03/02/11 09:27:05   Pg 24 of 29

the loan amount being requested and liquid cash reserves equal to or greater than 20% of the loan amount." (*Id*. at ¶ 23). Moreover, assuming an acceptable guaranty could be found, a new lender would require any new loan be fully amortized (i.e. repaid) prior to the end of the Facilities Leases, and while making interest and principal payments, conventional financing would only be obtainable based on a loan-to-value ratio not to exceed 60% and a debt service coverage ratio of at least 1.35:1. (*Id*. at ¶ 26). As set forth in the Declaration of David Rifkind, concurrently filed in support hereof, under these terms, the Debtor would not be able to obtain sufficient funds to repay GECC. (*Id*. at ¶ 28).

By failing to disclose any concrete financing plan, the Debtor practically admits that it cannot borrow a large enough amount at a sufficiently low rate to fund its Plan. Until the Debtor specifies *how* it will effectuate the proposed refinancing, it will be unable to meet the disclosure requirements of Section 1125 of the Bankruptcy Code, and the Disclosure Statement may *not* be approved.

### F. <u>The Debtor Fails To Adequately Disclose The Risk Factors Relating To Its Ability To Refinance And/Or Sell The Property</u>.

Chapter 11 of the Bankruptcy Code forces a complete disclosure and quantification of all liabilities against the bankruptcy estate, so that a meaningful plan can be negotiated and confirmed. *In Re Diberto*, 164 B.R. 1, 4 (Bankr. D. N.H. 1993). At a minimum, a disclosure statement must "contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); *see also In Re Bjolmes Realty Trust*, 134 B.R. 1000, 1001-1002 (Bankr. D. Mass. 1991).

### 1. <u>The Debtor Does Not Adequately Disclose The Tenant Risk.</u>

The Debtor characterizes its rental market risk as "whether the Property will continue to produce the same rents and cash flow going forward." (Disclosure Statement, VI.I, p. 38). The Debtor states that if the Battelle Property is unable to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

19

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

produce the same rents and cash flow, "there is a risk that the cash flow from operations will be inadequate to fund the Plan." (*Id.*)

The Disclosure Statement fails to disclose that the Facilities Leases provide for rents significantly above-market and that there are few, if any, potential replacement tenants for the Battelle Property. If Battelle leaves, which it may under the lease agreements between 2017 and 2018 (*see* Disclosure Statement, IV.C., p. 14), there is practically no possibility of re-tenanting the Battelle Property. Moreover, any re-tenanting is likely to require significant tenant improvements for which the Debtor does *not* have sufficient financial resources. The Debtor also fails to disclose that the passage of time makes obtaining financing less likely because the future revenue stream from, and with it the value of the Debtor's interest in, the Battelle Property decreases over time. (Disclosure Statement, VI.H., p. 38; Rifkind Decl., ¶ 20).

2. **The Debtor Does Not Adequately Disclose The Market Risk.**

The Debtor implies, but does not adequately disclose, that current financing for the Debtor's interest in the Battelle Property that would render the Plan feasible does not exist. Moreover, the Debtor fails to disclose that the passage of time reduces its ability to obtain financing due to the Battelle Property's decreasing revenue stream. The Debtor seeks to shift all of the risk of the Plan's infeasibility onto GECC in the hope that the market improves. This is not a Plan, and is inappropriate.

The Debtor references the risks related to the real estate and credit markets in terms of "whether or not the values of real estate will stabilize and result in a market where purchasers are again common and whether credit markets will stabilize so that lending to these types of business ventures again becomes readily available. If these do not occur, the balloon payments required by the Plan may not be possible." (Disclosure Statement, VI.H., p. 38).

Refinancing the Loan is the core of the Debtor's Plan. The Debtor's failure

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

20

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

10-04024-FLK11    Doc 181    Filed 03/02/11    Entered 03/02/11 09:27:05    Pg 26 of 29

to provide any support for its ability to obtain this financing constitutes materially inadequate disclosure. The Debtor all but admits, but does not adequately disclose, that current financing for its interest in the Battelle Property does not exist in an amount large enough and at a rate sufficiently low enough to render its Plan feasible. All the Plan accomplishes is to place all the risk on GECC while the Debtor prays for markets to improve. Therefore, the Disclosure Statement does not provide adequate information and may *not* be approved.

### 3. The Debtor Is Likely To Face A Subsequent Liquidation.

The Disclosure Statement provides that if replacement financing is unattainable, the Debtor will have to sell its interest in the Battelle Property and a liquidation will ensue. Section 1129(a)(11) of the Bankruptcy Code prohibits the confirmation of a plan of reorganization that is "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

The Debtor fails to disclose that, for the reasons set forth above, it is highly probable that the Debtor will be unable to obtain replacement financing in an amount sufficient to repay GECC, that present market conditions will not support the financing the Debtor requires to effectuate its Plan, and that this financing will be even less obtainable three years from today. (*See* Rifkind Decl., ¶ 28). Thus, the Debtor has failed to show that the Plan is not likely to be followed by a liquidation. As such, the Plan cannot be confirmed under Section 1129(a).

### G. The Infeasibility Of The Plan And Anticipated Liquidation Make It Unconfirmable.

"If the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the Court should exercise its discretion to refuse to consider the adequacy of its disclosures." *In re Eastern Maine Electric Cooperative, Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991) (quoting *In re Cardinal*

10-04024-FLK11   Doc 181   Filed 03/02/11   Entered 03/02/11 09:27:05   Pg 27 of 29

*Congregate I*, 121 B.R. at 764); *see also In re Monroe Well Service, Inc.*, 80 B.R. 324; *In re Pecht*, 57 B.R. 137 (Bankr. E.D. Va. 1986).

Where a plan's inadequacies are patent, there is no utility in proceeding with the burden and expense of seeking confirmation. *In re Pecht*, 57 B.R. at 139. Such an exercise in futility would needlessly increase administrative expenses – thereby eroding the bankruptcy estate – for a confirmation process doomed to failure. *See, e.g.*, *In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994); *In re Pecht*, 53 B.R. 768, 769-70 (Bankr. E.D. Va. 1985).

This Court should consider the issues of confirmability, even though this case is only at the disclosure statement stage. Replacement financing for the Allowed Claims is a critical component of the Plan. Although the Debtor "believes" that it will be able to timely perform all obligations described in the Plan, the Debtor fails to consider the significant risks a lender would face in providing financing and, in turn, the likelihood that the Debtor will not be able to obtain it. (Disclosure Statement, VI.H., p. 38). The Debtor also fails to acknowledge that it cannot legally or financially cram down GECC and, therefore, its Plan (even if it were feasible) is incapable of confirmation. Until the Debtor states with specificity *how* it will effectuate the proposed refinancing, can provide facts demonstrating the availability of this financing, can show that it can afford to cram down GECC (which it cannot) and can demonstrate that a cram down is legally appropriate (which it is not), the Plan cannot be considered feasible, or confirmable, as an eventual liquidation is very likely.

## H. Disapproval Of The Disclosure Statement Will Preserve The Estate.

As a result of the defects described in the foregoing sections, the Plan is incapable of being confirmed as currently drafted. Consequently, it is in the best interests of everyone involved in the case to avoid the needless diversion of time and resources that would be wasted in the futile effort of disseminating the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2226736.1

22

OBJECTION OF GECC TO DEBTOR'S
DISCLOSURE STATEMENT

Disclosure Statement, tabulating ballots, preparing objections to confirmation and undergoing a contentious and doomed confirmation process. Accordingly, in order to conserve the limited resources of the estate and encourage the good faith resolution of the case, the Court should refuse to approve the Disclosure Statement on grounds of Plan unconfirmability, as well as disclosure defects.[2]

## IV. CONCLUSION

Accordingly, for the reasons stated above, GECC respectfully requests that the Court (i) *not* approve the Disclosure Statement, (ii) order that the Plan cannot be confirmed as drafted, and (iii) and grant such other relief as the Court deems just and proper.

DATED: March 2, 2011                    Respectfully submitted,

By:      STOEL RIVES LLP

By:____/s/ Erin L. Eliasen_____
David B. Levant, WSBA No. 20528
Erin L. Eliasen, WSBA No. 37606

and

Primary Counsel:                        LATHAM & WATKINS LLP
(Please Contact                           Peter M. Gilhuly (*admitted pro hac vice*)
Primary Counsel)                          Ted A. Dillman (*admitted pro hac vice*)
                                        355 South Grand Avenue
                                        Los Angeles, California 90071-1560
                                        Telephone: (213) 485-1234
                                        Facsimile: (213) 891-8763
                                        peter.gilhuly@lw.com
                                        ted.dillman@lw.com

                                        Attorneys for General Electric Capital
                                        Corporation

---

[2] The defects with the Plan discussed herein are not an exhaustive list of GECC's objections; certain specific objections are set forth on **Exhibit A** hereto; and GECC reserves the right to raise additional objections to the Disclosure Statement at the hearing on approval thereof, and to raise additional objections to the Plan if a confirmation hearing is set.

10-04024-FLK11     Doc 181     Filed 03/02/11     Entered 03/02/11 09:27:05     Pg 29 of 29